CHARLES HUMPHRIES *v.* ILLINOIS CENTRAL RAILROAD CO.

1. RAILROADS.  *Fast train.  Foreign passengers.  Custom to stop.*

   Though one knows that a certain fast passenger-train, as a rule, does not stop at the station of his residence in this state, yet, if there is a custom for such train to stop there for the accommodation of passengers holding tickets purchased from connecting railways in other states, he may avail himself of this custom by purchasing such a ticket in another state, and making a contract for transportation to said station on said fast train.

2. SAME.  *Special contract.  Breach.  Recovery.  Peremptory instruction.*

   In a suit against the railroad company for failure to stop for him to get off at said station, he having purchased such a ticket in another state, it is error to instruct for defendant.  There being evidence tending to support his contention, it should be left to the jury to say whether plaintiff had a special contract to be carried to said station on that train, and whether there was such custom—a fixed habit, known to the traveling public—to stop for debarkation of foreign travelers.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

Appellant was in Bowling Green, Kentucky, and there purchased from the agent of a line of railway which connects with the Illinois Central Railroad at Milan, Tennessee, a through ticket to his home, Crystal Springs, Mississippi, on the line of appellee's road. He informed the agent that he wished to go on the first train that went south on appellee's road after Milan, the junction, should be reached, stating his reasons, and the agent sold him the ticket for that train, informing him when it would pass Milan. This was a fast passenger-train, running between Chicago and New Orleans, known as the vestibule limited. On entering the train at Milan his ticket was demanded, and he exhibited it. The ticket was punched by two successive conductors on appellee's road. Soon after reaching Canton, the third con-

ductor, on being shown the ticket, informed appellant that the train would not stop at Crystal Springs, and that he would have to get off at Jackson, a stopping-place just ahead, and await another train that carried local passengers. Appellant objected, and informed the conductor that his business engagements were such that he could not do this. He did not wait at Jackson, as suggested, and, the conductor refusing to stop at Crystal Springs, he got off at a watering-place beyond, from whence he returned to his home, traveling about ten miles in a buggy through the cold and dark. He brought this suit to recover damages, and on the trial the court gave the jury a peremptory instruction to find for defendant, and judgment was entered accordingly.

The opinion contains a further statement of the case.

*Calhoon & Green,* for appellant.

1. One purchasing a ticket for a certain station, to go by a particular train, is entitled to enforce the contract. *Railroad Co.* v. *Nuzum,* 50 Ind., 141; 2 Wood's Ry. L., § 356.

He may rely upon information derived from agents apparently having authority to act. 2 Wood's Ry. L., p. 1125; *Railroad Co.* v. *Pierce,* 47 Mich., 277.

The real contract may be shown by parol. *Railroad Co.* v. *Winters,* 143 U. S., 60; *Railroad Co.* v. *Riley,* 68 Miss., 765; *Hubbard* v. *Railroad Co.,* 64 Mich., 634. See also *Plott* v. *Railroad Co.,* 63 Wis., 511; *Wells* v. *Railroad Co.,* 67 Miss., 24.

The rules of the company could not affect the special contract. Passengers are not presumed to know them. *Beauchamp* v. *Railroad Co.,* 56 Texas, 239.

It was for the jury to say whether there was a special contract.

2. It is shown that there was a custom, known to and relied upon by plaintiff, to stop this train for through passengers. On this point see *Railroad Co.* v. *Randolph,* 53 Ill., 510; *Railroad Co.* v. *Adcock,* 52 Ark., 406.

*Mayes & Harris*, for appellee.

1. Appellant's claim is without merit. He had full knowledge of the rules, and was simply trying an experiment.

As to the right of a railroad company to run through trains, stopping at selected stations, see 44 Am. & Eng. R. R. Cas., 292; 127 U. S., 390; 132 *Ib.*, 146; 38 Kan., 608; 50 Ind., 141; 67 *Ib.*, 567; 76 Mo., 288.

2. It is the duty of a passenger to ascertain if the train is to stop at his destination. 9 Am. & Eng. R. R. Cas., 315; 50 Ind., 141.

3. If the passenger is misinformed by the ticket-agent, the conductor is not bound to stop his train in violation of rules. 3 Am. & Eng. R. R. Cas., 340; 18 *Ib.*, 253.

4. Taking up or punching the ticket does not bind the conductor to stop. 53 Ill., 310.

5. The duty of the company, even where the ticket-agent has given the passenger the wrong information as to running of through train, is to give him notice before reaching the station, in order that he may change to local train. 18 Am. & Eng. R. R. Cas., 252; 21 *Ib.*, 319; 34 *Ib.*, 298.

6. Humphries was not misled. There is no evidence that he would have taken any other train than this, if he had not received the alleged information. He was not told that this train would stop at Crystal Springs. He knew it would not stop there.

7. There is no sufficient proof of the alleged custom to stop for any class of passengers.

8. There is no evidence that the agent at Bowling Green had any authority to make a contract changing the rules of appellee.

Argued orally by *M. Green*, for appellant, and *J. B. Harris*, for appellee.

WOODS, J., delivered the opinion of the court.

The evidence of the appellant shows that he purchased a ticket for the train known as "vestibule limited," from Mi-

lan, in the state of Tennessee, to Crystal Springs, in Missis-
sippi. This evidence tends, too, to show that the ticket-
agent who sold the ticket for passage to Crystal Springs did
it knowing that it was to be used on the " vestibule limited.".
In other words, there is some evidence tending to show that
appellant had a special contract to be carried on a certain
train to a certain point, and that the railroad company failed
to perform the contract. It was shown by the company that
this particular train did not stop at Crystal Springs, and it
appears that appellant very well knew this. But there is
some evidence tending to show that it was an established
custom, in the running and management of the train, to
stop the " vestibule limited " at Crystal Springs to permit
the debarkation of a passenger holding what is denominated
a " foreign ticket "—a ticket purchased beyond the limits of
this state, and from the agents of some connecting railway
in another state. We think the jury should have been per-
mitted to say whether appellant had a special contract to
be carried on the particular train to Crystal Springs, and
whether there was a custom—a fixed habit, known to the
traveling public—to stop for the debarkation of foreign trav-
elers.

*Reversed and remanded.*