## Illinois Central Railroad Co. v. Surilda Siddons.

1. DAMAGES—*Special Damages Must be Averred.*—Special damages such as sickness and disappointment caused by the failing of a train to stop at a station and take the plaintiff on, etc.. must be averred in the declaration to be made the basis of a recovery, or to permit the introduction of evidence in respect thereto.

2. EVIDENCE—*In Aggravation of Damages.*—Where the wrong complained of is willfully done, evidence in aggravation of damages is admissible without special averment; but when the action is based merely on negligence, then evidence in aggravation of damages is not.

3. DAMAGES—*Mental Suffering, When Element of.*—Mental suffering, if the act was not willfully done, forms no part of the actionable injury.

4. RAILROADS—*Stopping Trains on Signal.*—Where a railroad company has been for a long time in the habit of stopping trains at a station on signal, such a course of dealing with the public imposed the duty on the company to stop such train on being signaled, and the duty on its servants operating the train to exercise care to observe signals. A failure of the servants to perform such duty, where a ticket had been purchased on the faith that they would do so, creates as clear a liability as that of a train which has been advertised to stop at a station and fails to do so.

**Memorandum.**—Action for failure to stop a train on signal. Appeal from the Circuit Court of Effingham County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

The opinion states the case.

APPELLANT'S BRIEF, WOOD BROS. AND W. H. GREEN, ATTORNEYS.

Special damages not necessarily resulting from the act complained of, must be particularly stated in the declaration to enable plaintiff to recover them or give evidence concerning them. 1 Chit. Pl., 396-7; Olmstead v. Burke, 25 Ill. 87; Miles v. Weston, 60 Ill. 364; Adams v. Gardner, 79 Ill. 570; Horne v. Sullivan, 83 Ill. 31; 2 Greenleaf Ev., Sec. 254; Buckley v. Holmes, 19 Brad. 533.

GILMORE & GILMORE, attorneys for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee brought this suit to recover damages for a failure on the part of appellant to stop its passenger train at Mason, Illinois, a signal station for such train, about four o'clock in the morning of July 16, 1892.

She desired to take such train for part of her journey to her home in Missouri, to which she was called by the receipt of a letter from her husband the evening before, announcing the sickness of her daughter-in-law and of her daughter-in-law's child, who lived near her home at Licking. The letter stated her husband would meet her at Salem on Friday

evening, the date on which she received the letter, and from there take her by a conveyance to Licking, a distance of twenty-seven miles.

The letter was not received as soon as expected by the writer, being delayed, as suggested, by high water, which impeded the movement of trains. In order to reach home that week she had to reach St. Louis, to take what is called the Frisco train, Saturday morning, run to Cuba, and from there take a branch road to Salem, which latter place would be reached about four o'clock Saturday afternoon, and thence to her home, twenty-seven miles by wagon road. If she did not reach such Frisco train and make Cuba Saturday, in time to make connection with train to Salem, she would have to wait at Cuba until about Monday noon, as no Sunday train was run on that branch road.

She prepared to take a train on appellant's road about midnight, bound north for Effingham, and then take a train about four o'clock Saturday morning on the Vandalia line, for St. Louis, and sent her father, whom she was visiting, Friday evening, to purchase a ticket over that route. After talking with appellant's station agent, who suggested that she could take the four o'clock train Saturday morning, bound south for Odin, and there make connection with a train on the O. & M., bound for St. Louis, which would enable her to take the Frisco train desired, and thus obtain a night's rest at her father's house, the father concluded to follow the suggestion, and purchased a ticket over the latter route. Mason had been a signal station for this train proposed to be taken, for many years, which fact the appellee's father well knew, as he stated he had often signaled that train.

He states that he asked the agent of whom the ticket was purchased, if he had not better secure a lantern with which to signal the train, but the agent said it was not necessary, that he could signal with his hat or anything. The appellee, with her father, reached the depot in time for the train. The father signaled the first one that approached, which responded, but proved to be a freight train. In about

ten minutes thereafter, the passenger train approached, which he signaled in like manner, by waiving across the track a basket, covered with new domestic, to the handle of which was tied a bandbox, but there was no response, and the train did not stop, on account, as stated by the engineer and fireman, that although they were on the lookout, they did not see the signal. The evidence tends to show the signal could have been seen that morning for a distance of two hundred feet or more, and that train had recognized and responded to other than light signals at that station on other occasions.

In fact the train men testify the train would have stopped on this occasion had the signal been seen. The appellant kept no night man at that station to make signals. It was customary for those desiring to take that train, to give the signals.

The station agent was immediately notified of the failure of the train to stop, who at once came to the office, and by telegraphing tried to find a way or route by which the appellee could reach her destination as desired, but could not do so. He, however, telegraphed the appellee's husband, at Salem, that his wife had missed the train, took back the ticket purchased, and refunded the money paid for the same. The appellee was delayed in starting for home until the following Monday morning, and did not reach her home until Tuesday night. After the failure of the train to stop, appellee repaired to her father's home, as she states, very much annoyed and worried. Her father states she went to bed sick.

Q. "During that two hours, did your daughter read any? A. Yes, sir, she picked up a piece of newspaper and read it."

Q. "Did she read, among other things, where in a similar case the company had been sued? A. Yes, sir."

He says this was a very short time after their return to the house. No physician was called to see appellee. In fact she says she was not sick.

Q. What was your condition, as to sickness or health, that morning? A. "I was very much flustrated and ex-

cited and worried, and feeling very bad; can't say that I was exactly sick, but was sick of heart, and troubled in my mind; was very uneasy about my family being sick, and my husband then at the station waiting for me." She testified that before going to the train she was as well as usual, and that thereafter she ate and slept but little until she got home.

There is no evidence of injury to her health or of extra expense, except one dollar, on account of the delay. The evidence as to sickness was admitted over the objection of appellant, to which exception was taken. The declaration contains three counts, the first two concluding substantially alike with the averment that such failure to stop the train caused appellee "great disappointment, annoyance and inconvenience." The third count concludes, "whereby she was delayed in her journey, and was subject to exposure and loss of time, and by reason of such exposure was made sick, and incurred much expense, to wit, the sum of $200, in and about her cure from sickness, occasioned by such detention and the expense caused thereby, to her damage of one thousand dollars." The appellee obtained a verdict for $300, which was sustained by the court and judgment entered thereon, after overruling motion for new trial. The principal error assigned relates to the evidence in regard to sickness of appellee, and the instructions of the court based on a right of recovery therefor.

It is clear, first, that there is no proof of exposure of the person of appellee to any external condition, arising from her failure or inability to take said train, that would or did cause sickness; second, there is no proof or averment that she was sick, directly caused by her failure to take such train; third, the declaration only counts for bodily sickness, caused by exposure to external and unusual conditions, by reason of such failure of duty on the part of appellant, of which, as stated, there is no proof, and therefore evidence of sickness from any other cause was inadmissible, and should not have been made the basis in the instructions for the recovery of damages.

It is not contended by appellee that sickness would be the

natural or probable result of the alleged negligence of appellant. If not, the rule is uniform, such special damages must be averred in the declaration to be made the basis of recovery, or to permit the introduction of evidence in regard thereto. In case of Horne v. Sullivan, 78 Ill. 31, the law in torts is stated to be, "The rule is that special damages must be particularly specified in the declaration or the plaintiff will not be permitted to give evidence of them at the trial," citing several authorities. 2 Greenleaf on Ev., Sec. 254. The case of Heirn v. McCaugham, 32 Miss. 17, is cited by appellee's counsel, as supporting the admission of evidence as to sickness, and the instructions based thereon. That case marks or illustrates the distinction made as to the admission of evidence in actions of tort. The court in that case say the act complained of was grievously wrong in itself, and therefore without special averment, any circumstance in aggravation of the wrong, for the purpose of increasing the damages, was proper. The law is that where the wrong complained of is willfully done, then evidence in aggravation of damages is admissible, without special averment, as when punitive damages may be recovered; but when the action is based merely on negligence, then evidence of other injuries than those averred in aggravation of damage, is not admissible.

The court instructed the jury that they should consider, if shown by the evidence, "mental anxiety and illness of body." Mental suffering, if the act was not willfully done, forms no part of the actionable injury. I. C. R. R. Co. v. Sutton, 53 Ill. 397; Joch v. Dankwardt, 85 Ill. 331.

The declaration does not count for a willful act. At most, the evidence only shows negligent performance of duty in failing to see the signal. This case is not like that of C. & A. R. R. Co. v. Flagg, 43 Ill. 364, where a passenger was wrongfully put off a train for failing to have a ticket, which, owing to the ticket office being closed, he could not procure, but offered to pay his fare, and where he, a stranger, was put off at a place not a station, on a dark night, away from human habitation; the wrong committed

was willful, exposed him to risk and subjected him to indignity. The court notes the willfulness of the act and distinguishes it from cases where that element does not exist.

Neither is it like those cases where there is a physical injury and pain and anguish of mind result therefrom. In such cases, pain and mental agony are the natural comcomitants of the injury done, though caused by mere negligence.

In the case of I. & St. L. R. R. Co. v. Stables, 62 Ill. 320, it is said "mental anguish is inseparable from bodily injury. * * * The mental anguish which would not be proper to be considered, is where it is not connected with the bodily injury, but was caused by some mental conception not arising from the physical injury."

It is suggested by appellant that it was not required to stop its train at the station of Mason except when flagged, and as its servants operating the train did not see the signal, there can be no recovery.

The appellee does not assert the appellant should have stopped its train without signal, but bases her right to recover on a failure to stop when signaled. The evidence shows this train had been stopped at that station by signals for many years. Tickets, doubtless during all these years, were sold by the company under the agreement that it would so stop. The ticket purchased by appellee was, in effect, with the agreement that if signaled it would stop, so she might take that particular train.

The servants of appellant testified, they would have stopped the train had they seen the signal. This course of dealing with the public imposed the duty on the company to stop such train on being signaled, and the duty on its servants operating the train to exercise care to observe signals. A failure of its servants to perform such duty where a ticket had been purchased on the faith that they would do so, would create as clear a liability as if that train had been advertised to stop at that station and had not done so. For the errors indicated the judgment will be reversed and the cause remanded.