[S. F. No. 2612.　In Bank.—January 21, 1904.]

## WORTHINGTON AMES, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROAD TICKET—SPECIAL TRAIN—RULE REQUIRING BERTH—NOTICE TO PURCHASER—ACTION FOR DAMAGES—PAROL EVIDENCE.—A railroad company has the right to run a special train at night for those only who procure sleeping-berths thereon; and a ticket for such train is subject to a rule making it a condition of the purchase that a berth shall be procured, of which the purchaser had notice, though not expressed in the ticket. In an action for damages for being put off of such train, all of the berths on which had been sold, parol evidence is admissible to prove such rule, and notice to the plaintiff by the ticket-agent that the ticket would not be good for such train, unless he procured a berth thereon. [Shaw, J., and Beatty, C. J., dissenting.]

ID.—TICKET NOT A FULL CONTRACT—RECEIPT FOR FARE—SUBJECTION TO RULES.—A railroad ticket is not a contract expressing all of the conditions and limitations usually contained in a written agreement; but it is more in the nature of a receipt, evidencing that the passenger has paid his fare for a certain kind of passage on the proper trains of the company, as limited and regulated by its lawful rules, to which the passenger may be required to conform, though not expressed in the ticket. [Shaw, J., and Beatty, C. J., dissenting.]

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

P. F. Dunne, for Appellant.

George B. Merrill, for Respondent.

VAN DYKE, J.—This is an appeal from an order granting the plaintiff's motion for a new trial. The action is for damages on account of being put off from one of defendant's trains.

The evidence shows that the plaintiff went to defendant's ticket office at the foot of Market Street in San Francisco, a little before five o'clock, in November, 1899, being a very short time before the boat left that crosses the bay in connection with the train for Los Angeles. He asked the defendant's ticket-seller for a ticket for the "Owl" train, and was immediately asked if he had a berth in the sleeper. Plaintiff informed the defendant's agent who sold the tickets that he had not, and was then told he would have to get a sleeping-berth across the bay or his ticket would not be good on the "Owl." He, however, requested the ticket and paid for and purchased one which, as far as material here, reads as follows: "Special limited; good for one continuous first-class passage, San Francisco to Los Angeles, 9:26m. Good only by Martinez route by train No. ——." On the ticket in the blank space after No. was stamped the words, "The Owl." This ticket was sold at the same price as a regular first-class ticket. On crossing the bay to connect with the "Owl" train plaintiff went to the Pullman conductor and asked for a berth. He was told that the berths had all been sold, and that his ticket would not be good on that train, as no berths could be procured. He was again told the same thing on the steps of the train before he got aboard. Notwithstanding this, however, he boarded the train and took a seat in the day coach, which was not a sleeper, and ran only as far as Bakersfield. Defendant at the time was running two regular daily trains from San Francisco to Los Angeles, one leaving in the morning at nine

o'clock, the other leaving in the evening at half-past five, and, in addition thereto, to accommodate persons desiring to make the trip quickly, it was running a special limited train called the "Owl," which ran at night only, at a special rate, upon a special schedule, with a limited number of Pullman sleepers, containing no accommodations for passengers except those who had berths. This was known to the plaintiff, as, in addition to being informed of the same, he had previously traveled on that train three or four times, between San Francisco and Los Angeles. Upon presenting his ticket to the conductor he was told his ticket was not good on the train unless he had a sleeping-berth, and that he would have to get off at Port Costa, and could there take the next regular Los Angeles train, which would be along in forty minutes, and would reach Los Angeles at one o'clock on the following day, instead of eight o'clock in the morning, that being the schedule time for the "Owl." This the plaintiff refused to do, and said he would return to San Francisco and bring suit against the company for damages, which he did.

The case was tried before a jury, resulting in a verdict for the defendant. The court in granting plaintiff's motion for a new trial said: "The same is granted upon the ground that the evidence does not support the verdict in this: That the notification to the plaintiff by the ticket-seller, when he purchased the railroad ticket in question, that such ticket would not be good upon the 'Owl' train unless he secured a berth, cannot and did not control or affect the obligation of the company, as evidenced by the ticket."

The question to be considered on this appeal, therefore, is whether the court below, in granting the new trial, correctly stated the law governing the case. The theory on which the order seems to have been made is, that the ticket is a contract, expressing all of its terms, and that the purchaser is not bound by any rules or regulations of the carrier other than those expressed on the ticket. We do not think such a contention can be maintained. Defendant had a right to run a special limited train for those only who could secure sleeping accommodations, and to make it a condition as to the purchase of the ticket that the passenger should procure a sleeping-berth before it could give him the benefit of the special

train. The ticket stated on its face that it was a special limited ticket, good for one continuous first-class passage, "San Francisco to Los Angeles." The evidence shows that the ticket was good for any other train on the date stamped upon it. The words cannot be held to be a contract that the purchaser could ride upon the "Owl," except upon compliance with the regulations of the defendant as to securing a berth. According to the letter of the ticket the plaintiff was entitled to take the "Owl" train at San Francisco instead of at Oakland. Yet he knew when he purchased it that he could not take that train at San Francisco, but must cross by ferryboat from San Francisco to the Oakland side of the bay and take it there, and that was therefore the contract or agreement, notwithstanding the reading of the ticket to the contrary. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, sec. 1636.) "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.) "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, sec. 1648.) "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." (Civ. Code, sec. 1653.)

But a railroad ticket is not a contract expressing all the conditions and limitations usually contained in a written agreement. It is more in the nature of a receipt given by the railroad company as evidence that the passenger has paid his fare for a certain kind of passage on the proper trains of the company, as limited and regulated by its rules. The fact that the words "The Owl" were stamped on the ticket entitled the plaintiff to ride upon that train if he had complied with the conditions of securing a berth thereon, which he failed to do. It is said in Elliott on Railroads (sec. 1593): "According to the generally accepted doctrine, a ticket, in the ordinary form, is a voucher, token, or receipt, rather than a contract, adopted for convenience, to show that the passenger has paid his fare from the place or station named therein as the place of de-

parture to the place or station named therein as the place of destination. . . . A ticket is evidence of a contract to carry and the right to passage, but the contract itself is implied by law, except in so far as it is expressed in the ticket. Upon the theory that it is not itself the written contract, parol evidence has been held admissible to prove the terms of the contract in fact entered into between the company and the passenger, or the representations made by the agent, at the time the ticket was purchased, as to stop-over privileges or the like." In conformity with the foregoing, our code provides: "A common carrier of persons may make rules for the conduct of his business, and may require passengers to conform to them, if they are lawful, public, uniform in their application, and reasonable." (Civ. Code, sec. 2186.) "A passenger who refuses to pay his fare or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier. But this must be done with as little violence as possible, and at any usual stopping-place or near some dwelling-house." (Civ. Code, sec. 2188.) In *Dietrich* v. *Pennsylvania etc. R. R. Co.,* 71 Pa. St. 436,[1] in speaking of railroad tickets, it is said: "So far as they are expressed the terms are binding of course, but such tickets are not the whole contract, which must be gathered so far as not expressed, from the rules and regulations of the company in running its trains. . . . The authorities, as well as the reason of the thing, show that the company must make its own regulations, and that passengers purchase their tickets subject to these rules, and that it does not lie on the company to bring home notice of them in order to establish the terms of the contract of carriage." This case was approved in a later one, *Lakeshore etc. Ry. Co.* v. *Rosenzweig,* 113 Pa. St. 536, in which it was said: "The plaintiff's ticket was evidence of the payment of his fare, and of his right to be carried according to its terms. It did not express the whole contract. What it does not set forth may be ascertained from the reasonable rules and regulations of the defendant; and the holder of the ticket is bound to inform himself of such regulations respecting the conduct of trains and the right of passengers." In *Chicago etc. R. R. Co.* v. *Randolph,* 53 Ill. 515,[2] the court said:

[1] 10 Am. Rep. 711.        [2] 5 Am. Rep. 60.

"When a traveler obtains such a ticket, he should inform himself as to the usual mode of travel on the road, and so far as the customary mode of carrying passengers is reasonable, he should conform to it. . . . The requisite information can always be had from the agent where the ticket is procured, and it is but reasonable to require passengers to obtain the information and act upon it." (See, also, *Peck* v. *New York Cent. etc. R. R. Co.,* 70 N. Y. 587; *McRae* v. *Wilmington etc.* R. R. Co., 88 N. C. 532;[1] *Wright* v. *California Cent. Ry. Co.,* 78 Cal. 360.) As stated in the foregoing, a ticket seldom expresses all the conditions of the contract between the carrier and the passenger. The liability of the carrier, the conditions implied by law, and the conditions upon which the passenger may use the ticket are seldom expressed therein. In such case parol evidence is admissible to show the elements of the contract, if not in conflict with its express terms. (1 Fetter on Carriage of Passengers, sec. 275; *Burnham* v. *Grand Trunk Ry. Co.,* 63 Me. 301;[2] *Peterson* v. *Chicago etc. Ry. Co.,* 80 Iowa, 98.) The rule as herein laid down worked no injustice to the plaintiff. He was distinctly told when he purchased the ticket, and subsequent thereto, that he could not use it on the "Owl" without a berth in the sleeper, and his ticket was good on a regular train following it in less than half an hour at the point where he left the "Owl," which would have carried him to the same destination a few hours later than the schedule time of the "Owl." While it is the duty of railroad companies carrying passengers to use all reasonable protection for their safety, comfort, and convenience, it is also the duty of passengers to comply with reasonable rules and regulations of the company.

The court below erred in holding that the notification to the plaintiff that his ticket in question would not be good upon the "Owl" train unless he secured a sleeping-berth could not control or affect the obligation of the company as evidenced by the ticket. As this appears to be the only ground upon which the motion for a new trial was granted, the order granting the same is reversed.

McFarland, J., Lorigan, J., and Henshaw, J., concurred.

---

[1] 43 Am. Rep. 745.                    [2] 18 Am. Rep. 220.

SHAW, J., dissenting.—I dissent. I take it that no proposition is more fully settled than this, that parol evidence cannot be admitted or used to vary or contradict the effect of a written contract. In this state this rule has the express force of statute law. "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (Civ. Code, sec. 1625.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." (Civ. Code, sec. 1639.) "The language of a contract is to govern its interpretation, if the language is clear and explicit." (Civ. Code, sec. 1638.) And the previous decisions of this court are in full accord with these principles. "The law deems all such stipulations merged in the writing, which is treated as the exclusive medium of ascertaining the agreement to which the parties bound themselves." (*Goldman* v. *Davis,* 23 Cal. 256; *Guy* v. *Bibend,* 41 Cal. 322; *Ward* v. *McNaughton,* 43 Cal. 159; *Nicholson* v. *Tarpey,* 89 Cal. 617.) Parol evidence is inadmissible to prove that an unconditional written obligation is not to be performed except upon a contingency not stated in the writing. (*San Jose Sav. Bank* v. *Stone,* 59 Cal. 187; *Long* v. *Saufley,* 89 Cal. 439; *Bradford Inv. Co.* v. *Joost,* 117 Cal. 210; *Cashman* v. *Harrison,* 90 Cal. 297; *Dexter* v. *Ohlander,* 89 Ala. 262.) The majority opinion holds that this case is an exception to the rule.

The reason first given is, that the ticket in question, notwithstanding its terms, is subject to the rules and regulations of the defendant company contrary thereto. I concede that proof of such regulations or of other explanatory facts, coupled with proof of knowledge thereof by the parties, is competent to help out a contract where it is uncertain, or to supply anything omitted therefrom. It would have been proper, for illustration, to show in the case at hand what was meant by the "Martinez route," and by the "Owl train." For this would explain what would otherwise be an ambiguity in the terms of the contract. But here the effect of the regulation is to contradict the contract, to destroy altogether the undertaking of the defendant therein set forth, except upon

a condition not therein expressed, and to require the payment of an additional consideration for an additional accommodation as a condition precedent to the existence of any obligation on the part of the carrier.   The proposition that such regulations control, instead of the contract, is certainly a startling one.   There is a well-known principle to the effect that a contract must be interpreted according to the law or usage of the place where it is to be performed.   (Civ. Code, sec. 1646.) It has been said that such laws are a part of the contract. (9 Cyc. of Law and Proc., sec. 582.)   But even this doctrine is confined to such terms as are omitted from the contract, and which the law supplies.   Where the contract is contrary to the law, it does not have the effect of adding a term to the contract, and thus making an agreement to which the parties have not consented, but of making the contract to that extent invalid.   I think it has never before been decided that the rules and regulations of a railroad company are of greater potency than the law of the land, and when inconsistent with and contrary to a written contract, into which the company has entered, are paramount thereto, and furnish the legal measure of the rights of the parties, instead of the contract itself. Not even a general usage or custom of trade, much less a mere business regulation of one of the parties, can be proven to relieve a party from his express stipulation, or to vary a written contract which is certain in its terms.   (Code Civ. Proc., sec. 1870, subd. 12; *Holloway* v. *McNear,* 81 Cal. 156; *Burns* v. *Sennett,* 99 Cal. 371; *Milwaukee Co.* v. *Palatine,* 128. Cal. 74; *Ah Tong* v. *Earle Fruit Co.,* 112 Cal. 681.)

The other reason given for the prevailing opinion is, that "a railroad ticket is not a contract expressing all the conditions and limitations usually contained in a written agreement," but "is more in the nature of a receipt given by the railroad company as evidence that the passenger has paid his fare for a certain kind of passage on the proper trains of the company, as limited and regulated by its rules."   Of course, railroad tickets do not always express the whole contract.   In fact, they seldom do.   But this is beside the question. We are not here concerned with some term of the actual agreement that was omitted from the writing, but with a term which was inserted, and which defendant seeks to nullify

by proof of a parol contract of a different effect. With singular inconsistency, the majority opinion quotes in its support a passage from *Dietrich* v. *Pennsylvania etc. R. R. Co.*, 71 Pa. St. 436,[1] the very first words whereof are, ''So far as they are expressed the terms are binding, of course.'' I concede that where a railroad ticket is unsigned, and is a mere memorandum expressing, in part, an agreement for the carriage of the passenger, it is proper to supplement it, or even contradict it, by proof of additional parol conditions and stipulations inconsistent with the printed memorandum. Many of the decided cases are thus explainable. But it cannot be successfully contended that the ticket here in question was not a contract, intended to be binding on the parties, so far as it expressed the terms thereof. This is best shown by the contract itself. It was regularly signed by the plaintiff and indorsed by the defendant, and was as follows:—

''Special limited ticket good for one continuous first-class passage, San Francisco to Los Angeles. 9:26 m. Good only by Martinez route, by train No. .. 'The Owl' subject to the following contract: In consideration of this ticket being sold at a rate less than the regular first class rate, I, the purchaser, hereby agree that it shall not be good for passage after the date indicated by the agent's punch marks in the margin (Nov. 12, 1899), and that it will be good only for a continuous trip to destination by the proper train and its connecting trains. That it is not transferable and shall be void after the date of expiration. And that failing to accept and comply with this agreement, the conductor will refuse to accept this ticket, and demand the full regulation fare, which I agree to pay. No stop-over privileges will be given on this ticket. Baggage must not be checked hereon to or from intermediate or way stations. Liability for damage limited to $100. Agent will in no case extend time on this ticket. If more than one date be punched, it shall not be received for passage by conductor.''                         (Signed)   ''W. AMES.''

.(Indorsed by stamp)   ''Southern Pacific Company,
''November 11, 1899.''

The defendant must certainly have intended to exact from the plaintiff the execution of this ticket as a contract, and

---

[1] 10 Am. Rep. 711.

one that would be binding on him for all the conditions expressed therein. The cases involving tickets not signed, or terms not covered by the contract therein expressed, have no application here. It is from such cases alone that the prevailing opinion finds support. If the evidence offered had been of some agreement not contradictory of the agreement expressed in the ticket, it would of course have been admissible, but this cannot be contended. The ticket in question was a clear undertaking on the part of the defendant to carry the plaintiff upon a continuous trip with first-class accommodations on the Owl train from San Francisco to Los Angeles by the Martinez route. No conditions were expressed requiring the purchase of any berth upon the sleeping-car. By the parol evidence introduced the defendant endeavored to prove that, notwithstanding this agreement, there was a contract that the defendant should be under no obligation to carry the plaintiff upon that particular train, unless, in addition to the price of the ticket which he paid, he should succeed in purchasing from another company a berth in a sleeping-car at an additional price. This was making a contract inconsistent with the written contract, and is contrary to all the principles laid down in our codes, and contrary to the rules expressed in the authorities cited in the prevailing opinion itself. I can see no reason why a railroad company is not as much bound by such a contract for the carriage of a passenger as it is by the terms and conditions of an ordinary bill of lading for the carriage of freight. The signature to a ticket is required because the railroad company intends that the passenger shall be bound. It is an unvarying rule that contracts are mutual, and if one party is bound by its terms both must be.

There is no element of hardship in the case which requires any relaxation of the rule. The defendant was entitled to the benefit of the evidence which it introduced, not for the purpose of varying or changing the contract in the least, but for an entirely different purpose. The question of damages was a material one in the case, and it was proper for the defendant to prove that the plaintiff had been informed before he entered upon his journey that he would not be allowed to ride upon that train unless he obtained a sleeping-

car berth. If he was thus warned of the consequences he could not claim so much damages as he might well do if he had been taken by surprise and ejected from the train without previous notice. The testimony was therefore admissible in mitigation of damages, and would be of much weight for that purpose, but it should not be used to vary the contract expressed in the ticket.

Beatty, C. J., concurred with Shaw, J.

Rehearing denied.