[No. 41.  Third Appellate District.—July 24, 1905.]

# HENRY WIELAND, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROADS—EJECTION OF PASSENGER FROM FREIGHT-TRAIN—EVIDENCE—CONDITION OF PASSENGER—PAYMENT OF FARE—DECLARATIONS OF CONDUCTOR.—In an action of damages for the ejection of a passenger from a freight-train, where the conductor and numerous witnesses testified that he was drunk, and the plaintiff denied it and attributed resulting injury to his sickness, and it appears that he then paid his fare to the brakeman, it was prejudicial error, without legal foundation for impeachment, to admit evidence of the mere declarations of the conductor made on the subsequent day that the plaintiff was not drunk, that he had paid his fare, and that he had been put off at a prior station because he did not intend to stop at his destination.

ID.—CUSTOM AS TO PASSENGERS ON FREIGHT-TRAINS—RIGHTS OF PASSENGER.—A passenger having knowledge of the custom to carry passengers on freight-trains between certain points has a right to assume its continuance unless notified in the usual manner, and is not bound to make special inquiry or to obtain a special permit; and the railroad company, having knowledge of such custom, would be liable to the passenger for a violation of his rights, though the custom was in violation of its rules.

ID.—SUSPENSION OF RIGHT—NOTICE TO PASSENGERS—CUSTOM AS TO STOPPAGE OF FREIGHT-TRAIN.—The mere fact that passengers were carried on the freight-train did not confer upon plaintiff an absolute right of transportation. The company could suspend or determine the permissive use; and notice to passengers, given at the starting station, or such suspension, or then given under a custom not to stop at plaintiff's station because handling of freight there was not required, if heard by plaintiff, made it his duty to leave the train, and he could be lawfully ejected at an intermediate station if he remained upon the train in violation of such notice.

ID.—PAYMENT OF FARE TO BRAKEMAN—BURDEN OF PROOF—WANT OF AUTHORITY—ERROR IN REFUSING INSTRUCTION.—A brakeman upon a freight-train is not usually authorized to receive payment of fare; and the burden of proof is on the passenger paying fare to him to show that he was authorized to receive it, or that it was paid to the conductor; and in the absence of such proof, and upon proof of the brakeman's want of authority, it was error to refuse an instruction based upon such want of authority.

APPEAL from a judgment of the Superior Court of Fresno County.  W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellant.

Henry Brickley, and George Cosgrave, for Respondent.

McLAUGHLIN, J.—This is an action for damages caused by wrongfully ejecting plaintiff from one of defendant's trains. The pertinent facts may be summarized as follows: For several months prior to June 18, 1902, passengers had been carried to and fro between Fresno and Rolinda in the caboose of a freight-train. The custom, as shown by the evidence, was for passengers to board the train at either point and pay the fare to the conductor, who always collected such fare from passengers in the caboose. On the date mentioned respondent and other passengers entered the caboose, to be carried to different points along the route, plaintiff's destination being Rolinda. Rolinda is a flag station where this train stops on signal, and it was the custom to let passengers on and off at this point. Kearney's spur is a switch about two and one third miles from Rolinda, at which there are no houses; there are, however, three houses within a distance of one and one quarter miles. The brakeman testified that before leaving Fresno he entered the caboose, and, in a tone loud enough to be heard by any one therein, announced that the train would not stop at Rolinda that night, and that thereupon some men left the caboose. In this he is corroborated by the witnesses who were present, and contradicted by none save respondent, who testified that he heard no such announcement, and saw no person leave the caboose, although he boarded the train quite a while before it left Fresno. The brakeman is not absolutely certain that respondent was present when the announcement was made, but two passengers say that he was and must certainly have heard it. The brakeman, conductor, and passengers who were witnesses agree in saying that respondent was intoxicated when he boarded the train and when he got off. This he denied, and considerable evidence touching his condition before and after his ejection, and relating to his habits in this regard, was introduced by both parties to the action. Respondent paid his fare to the *brakeman* before reaching Kearney, and at this point was told that he would have to leave the train, as no stop would be

made at Rolinda. He himself says that no force was used; that he got off the train and the brakeman handed him his satchel. He was next seen the following morning lying near the railroad track at a point about one mile from Kearney, and close to a dwelling known as the Saier place. Later in the day he called at this house, obtained something to eat, and made himself obnoxious to Mrs. Saier, who turned the hose on him. That lady and her daughter both say he was intoxicated and drank some while at their house, but respondent again champions his sobriety and says he was not drunk, but was sick. In fact he says he went to Fresno for medicine and was ailing during the whole trip. He admits that he had one bottle of wine with him when he left the train, but other witnesses say that he had four or five bottles in the satchel, which was so heavy that it caused him to stumble and fall when it was handed to him by the brakeman at Kearney.

The conductor first saw the respondent at Kearney, heard his complaints about being put off the train, and offered to carry his satchel to Collis and leave it at Rolinda the following night, which offer was declined.

The evidence shows without conflict that this was the only occasion when the brakeman collected fare from a passenger, and it is also clear that he had no authority to do so then. There is no evidence to show that the brakeman turned the fare over to the conductor or to the company, and the only evidence that the conductor knew that respondent had paid any fare, is found in his declarations as narrated in the testimony of Mr. Kennedy, which narration will be considered later. The brakeman testified that he told the respondent that they would take him to Collis, a station beyond Rolinda, but respondent said he would prefer to get off at Kearney, as it would be a shorter walk from Kearney than from Collis. The respondent, however, says that he asked to be taken to Collis, but his request was refused.

It is apparent from the foregoing that there is a sharp conflict between respondent and other witnesses, and the importance of testimony bearing upon his capacity to realize and remember what transpired, and tending to show that he was less likely to be correct in his statements than other witnesses, is manifest. The theory of plaintiff, as disclosed by the evidence, was that sickness prevented his reaching Rolinda

or any of the dwellings nearest to Kearney, and that as a consequence he was compelled to remain out all night, thereby contracting a cold which, in time, resulted in severe and permanent injury.

On the other hand, the theory of defendant was, that but for his continued drinking from the bottles he had with him respondent could easily have reached Rolinda or at least found shelter in one of the dwellings mentioned.

Under these circumstances, J. W. Kennedy, a witness called by respondent, was, notwithstanding appellant's timely and sufficient objection, permitted to testify to certain declarations of Speake, the conductor, made the next evening at Rolinda, as follows: "I asked Mr. Speake if Mr. Wieland got on the train the evening before. At this time Mr. Wieland had not got home. The next evening when the train came along I flagged the train and asked Mr. Speake if Mr. Wieland got aboard the train at Fresno. He said he did. I asked him what he did with him. He said, 'I put him off at Kearney's spur.' I says, '*Was Wieland drunk?* He said, '*No.*' I said, 'Didn't he have money enough to pay his fare?' He says, '*Yes, he paid his fare.*' I said, 'What did you put him off for?' He said, 'Because I didn't intend to stop at Rolinda.'" This was error. (*Williams* v. *Southern Pacific Co.*, 133 Cal. 550, [65 Pac. 1100]; *Heckle* v. *Southern Pacific Co.*, 123 Cal. 441, [56 Pac. 56]; *Luman* v. *Golden Ancient Mining Co.*, 140 Cal. 709, [74 Pac. 307].) Counsel for respondent, however, contends that the error is not prejudicial, because the evidence could have little bearing on the case, and in any event was substantially corroborated by the conductor. This contention cannot be sustained. We have seen that the condition of plaintiff, as to being drunk or sober, had an important bearing on the degree of credit to be given his testimony, and also on the cause of his remaining out all night. The conductor testified that he thought plaintiff was under the influence of liquor, and the evidence of Kennedy shows a contrary statement at another time. To hold that such evidence could be harmless would be to ignore its bearing on the testimony of plaintiff and on vital issues in the case and sanction the impeachment of a witness not only in an improper and illegal manner, but at a time antedating the testimony of the witness impeached. Moreover, the declara-

tion as to the payment of fare was important, for aside from this there is nothing in the record to show that the conductor had any knowledge of such payment. The error was, therefore, very prejudicial.

This seems to be the pioneer case in this state touching some questions of law which must necessarily arise on a retrial of the cause, and hence we deem it our duty to pass upon such questions.

The law of this state provides that when fare is taken for transporting passengers on a freight-train the same care must be taken and the same responsibility is assumed by the corporation as for passengers on passenger cars.   (Civ. Code, sec. 483.)   This is the only statute we have touching the relative rights of passengers and company, under such circumstances as are disclosed in the case at bar.   Nor can much aid be derived from a study of the few authorities bearing upon cases somewhat analogous.   But law is reason, and reason points to principles of law which must control in the solution of questions presented.   This particular train, under the regulations of the company, carried passengers whenever the train was to stop at Rolinda.   Aside from these regulations, there was strong evidence to show that it always stopped for passengers desiring transportation between the two points.   The train did not always stop there, and there was no regular schedule, as stops, according to regulations, depended upon the necessity for handling freight at Rolinda.   The custom, according to the conductor, was to lock the caboose when no passengers were to be taken, or to announce the fact before leaving Fresno when no stop was to be made at Rolinda. This being the custom, respondent, who had traveled on this train before, had a right to assume its continuance, and that he would again be given transportation on the same terms as before, unless he was notified in the usual manner and according to the custom mentioned.   Therefore he was not bound to make special and independent inquiry, nor to obtain a special permit from the superintendent.   There can be no doubt that if the company permitted the inauguration and continuance of this custom, and accepted the fares collected, it would be bound by it, for "He who can and does not forbid that which is done in his behalf is deemed to have bidden it." It could not wink at a violation of its rules as long as benefits

accrued, and then hide behind such rules and regulations when liability was threatened, for, ''He who takes the benefit must bear the burden.''

But, on the other hand, the mere fact that passengers had been carried on this train did not give respondent an absolute right to transportation. The company could at any time suspend or discontinue this permissive use, and passengers notified either under this undoubted right, or under the custom mentioned, that the train would not stop at Rolinda, were in duty bound to leave the train, and if they did not do so they could lawfully be ejected. (Civ. Code, secs. 484, 487.) The respondent may not have heard the announcement, but if he did he could not here have an advantage growing out of his own wrong in thereafter remaining on the train. It is a matter of common knowledge that brakemen are not authorized to receive fares from passengers on any train, and as a matter of law passengers should not pay fare to any person unless his badge indicates his authority to receive it. (Civ. Code, sec. 488; *Cox* v. *Los Angeles Terminal Ry. Co.*, 109 Cal. 105, [41 Pac. 794].) Respondent having paid his fare to the brakeman, a person not generally authorized to receive it, the burden was upon him to show authority in this instance. This he utterly failed to do. The evidence affirmatively shows a total absence of such authority, and we think it was error to refuse defendant's instruction bearing on this branch of the case.

We believe the foregoing sufficiently indicates our view touching disputed questions of law.

The judgment is reversed.

Buckles, J., and Chipman, P. J., concurred.