[Civ. No. 92.    First Appellate District.—November 17, 1905.]

# F. DELMONTE, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROADS—WRONGFUL EJECTION OF PASSENGER—PURCHASE OF TICKET IN RELIANCE UPON CUSTOM—CONFLICTING EVIDENCE—INSTRUCTIONS. In an action for damages against a railroad company for wrongful ejection of plaintiff from its train, after having purchased a ticket for a particular station, in reliance upon its custom to stop thereat, on the day before a holiday, where the evidence was conflicting as to the existence of such custom, the court properly modified instructions requested by the defendant, and gave instructions at request of the plaintiff, so as to include the right of the plaintiff to depend upon such custom, in the absence of ·express notice of a change thereof.

ID.—REMEDY OF PLAINTIFF—ACTION IN TORT.—The plaintiff is not compelled to rely on the recovery of damages for breach of the contract of carriage, but may bring an action in tort to recover damages for a wrongful expulsion from the train.

ID.—DAMAGES NOT EXCESSIVE.—An award by the jury of five hundred dollars' damages for a wrongful expulsion of the passenger, as the result of which he walked three miles to his home, getting wet in so doing, from which he contracted pneumonia, cannot be said to be excessive, and is conclusive on this count, in the state of the evidence, where the trial court fairly submitted to the jury the question whether the plaintiff had aggravated his injuries or sickness by his own negligence.

APPEAL from an order of the Superior Court of the City and County of San Francisco, denying a new trial.    Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Naphtaly, Freidenrich & Ackerman, for Appellant.

A. T. Roche, and Sullivan· & Sullivan, for Respondent.

HALL, J.—Appeal from order denying defendant's motion for a new trial.

The action was for damages alleged to have resulted to plaintiff from being ejected from a train of defendant on the evening of November 25, 1896, which was the day before Thanksgiving Day.  It was shown that plaintiff was, on the 25th of November, 1896, and for several years prior

thereto had been, a government employee at Mare Island, and that ever since May 21, 1893, his family had resided at a small station on the railroad of defendant known as Rodeo. Defendant testified that it had always been his custom on Saturdays and days immediately preceding a government holiday to go to his home at Rodeo, taking a boat operated by defendant from Vallejo to Vallejo Junction, and thence by train to Rodeo. On the day in question he bought a ticket from the agent of the defendant at Vallejo to Rodeo, went onto the boat, where his ticket was punched, was conveyed by the boat to Vallejo Junction, but on entering the train at Vallejo Junction he was told by the conductor that the train did not and would not stop at Rodeo, and on his refusal to get off the train he was put off by the conductor. He then walked to his home at Rodeo, some three miles away, getting wet in so doing, and thus catching cold, which finally developed into pneumonia. The train that plaintiff attempted to take passage on was an overland through train bound for San Francisco, known as No. 2, and was not scheduled to stop either at Vallejo Junction or Rodeo. The boat was not regularly run by defendant from Vallejo to Vallejo Junction after 4:20 P. M., except that on Saturdays and days immediately preceding a holiday it was run, and had been so run for a long time, at 6 o'clock P. M. from Vallejo, connecting at Vallejo Junction with a train for San Francisco for the accommodation of the government employees at Mare Island. On this date, however, it did not leave at 6 o'clock, but left Vallejo at about 7 o'clock P. M., of which due notice had been given by the agent of defendant. Evidence was given (and on this point there was no dispute) that the said late boat on Saturdays and on days immediately preceding holidays connected with a train at Vallejo Junction for San Francisco, and Mr. Wilder, trainmaster for defendant, testified: "It was the general custom for train No. 2 to stop at Vallejo Junction on every day next preceding a holiday, prior to November 25, 1896, to take in the employees from Mare Island Navy Yard." There was a conflict of evidence, however, as to whether or not it was the custom for this train to stop for the purpose of discharging passengers at any of the stations between Vallejo Junction and Oakland on such days. It was the last

train on that day from Vallejo Junction going toward San
Francisco.

The defendant requested the court to give several instruc-
tions which were by the court refused as requested, but were
by the court modified and given as modified. The follow-
ing are two of such instructions, which are types of the
others, the modifications being in italics: "It is the duty
of a passenger before he takes a train to see to it that his
ticket will carry him on that train, *but he may depend on
custom, or until he gets express notice of a change from any
source.* If the train is what is called a through train,
namely, one which does not stop at all stations and does
not stop at the station called for by the ticket, then such
passenger is not *ordinarily* entitled to ride on that train,
and it is his duty, when requested by the conductor to alight,
to comply with that request, unless the car is then running
at such a high rate of speed as to make it dangerous for
him to attempt to alight, and if the passenger refuses to com-
ply with the request, the conductor and those in charge
of the train have the right to eject him, using such force,
and no more, as is requisite for that purpose, provided, of
course, that the train is not then moving at such a high rate
of speed as would make it dangerous for a person to alight."
And "the defendant, as a common carrier of passengers, has
the right to regulate the operation of its trains over its track,
and to fix the various stopping places of such trains, and
if you find from the evidence that the boat that left North
Vallejo on the evening of November 25, 1896, was a special
excursion boat connecting with the train at Vallejo Junction,
then I charge you that it was the duty of the plaintiff, be-
fore taking passage on such boat, to ascertain if said con-
necting train would stop at Rodeo, *unless a prior custom
to stop had rendered that unnecessary."* The court also, at
the request of plaintiff, gave instructions to the jury em-
bodying similar principles as to the rights of plaintiff un-
der prior custom.

It is now insisted by appellant that the court erred in
thus modifying the instructions requested by defendant, and
in giving those requested by plaintiff. The law, however,
seems to be as given by the trial court. In *St. Louis etc. Ry.
Co.* v. *Adcock,* 52 Ark. 406, [12 S. W. 874], it is said: "If

the plaintiff, without fault of his, was misled by the company's custom into believing that the place was a flag station for night passenger trains, then his right to recover was the same as though he had been misdirected by its authorized agent. It would be otherwise if he was not informed of, or had not relied upon, the custom, or if the stoppage of the train was only casual and not habitual." In *Hull* v. *East Line Ry. Co.*, 66 Tex. 619, [2 S. W. 831], it is said: "If it be true, as the great weight of evidence tends to show, that the trains of appellee frequently stopped at 'Veal's Switch,' and there received and discharged passengers, it is unimportant that conductors may have had no authority from the company to do so. What they frequently did in the course of their employment in the conduct of the business of the principal, in so far as the traveling public are concerned, must be deemed to have been done in the exercise of power conferred by the principal, though, in fact, the principal may have forbidden the act." In *Humphries* v. *Illinois Cent. Ry. Co.*, 70 Miss. 453, [12 South. 155], the plaintiff had a ticket for Crystal Springs purchased outside the state, and was on a train not scheduled to stop at that place. His action had been by the trial court dismissed, and in reversing the judgment the appellate court said: "We think the jury should have been permitted to say whether appellant had a special contract to be carried on the particular train to Crystal Springs, and whether there was a custom—a fixed habit—known to the traveling public to stop for the debarkation of foreign passengers." To the same effect is *Illinois Cent. Ry. Co.* v. *Siddons*, 53 Ill. App. 607, where it was held that "where a railroad company has been for a long time in the habit of stopping trains at a station on signal, such a course of dealing with the public imposed the duty on the company to stop such train on being signaled. A failure of the servants to perform such duty, when a ticket has been purchased on the faith that they would do so, creates as clear a liability as that of a train which has been advertised to stop at a station and fails to do so." In another case from the same state this language is used: "It then follows that where a passenger purchases a ticket he only acquires the right to be carried according to the custom of the road. When he obtains a ticket he has

a right to go to the place for which it calls on any train that usually carries passengers to that place.'' (*Chicago etc. R. R. Co.* v. *Randolph*, 53 Ill. 510, [5 Am. Rep. 60].)

From the foregoing authorities it is seen that a passenger has a right to rely on the custom of the common carrier, at least in the absence of information to the contrary. In none of the cases cited by appellant was the question of a custom involved. In the case of *Ames* v. *Southern Pac. Co.*, 141 Cal. 728, [99 Am. St. Rep. 98, 75 Pac. 310], relied on by appellant, it was shown by parol testimony that when the plaintiff purchased his ticket he was informed that it would not be good on the ''Owl'' train, unless he also secured a ticket for a sleeping berth. He procured no such ticket, and therefore had no right on the train. The question upon which the case was decided was as to the admissibility of the parol testimony, the ticket itself making no reference to the requirement to procure a sleeping berth. The right to rely on a custom was not involved.

Appellant also insists that plaintiff's only redress is an action on the contract, and not an action in tort. It has been decided otherwise in this state. (*Sheldon* v. *The Uncle Sam*, 18 Cal. 526, [79 Am. Dec. 193]; *Jones* v. *Steamship Cortes*, 17 Cal. 487, [79 Am. Dec. 142]; *Sloane* v. *Southern California R. R. Co.*, 111 Cal. 668, [44 Pac. 320].)

We do not think the amount of damages awarded—$500— was excessive. The court fairly submitted to the jury the question as to whether the plaintiff had aggravated his injuries or sickness by his own negligence, and the determination of the jury on that question in the state of the evidence in this case is conclusive on this court.

The order denying the motion for a new trial is affirmed.

Harrison, P. J., and Cooper, J., concurred.