[Civ. No. 7446. First Appellate District, Division One.—August 29, 1931.]

MARY SANCHEZ, Respondent, v. PACIFIC AUTO STAGES (a Corporation) et al., Appellants.

394

Archer Bowden for Appellants.

Alfred Aram for Respondent.

WARD, J., *pro tem.*—This is an action for personal injuries. The jury returned a verdict in favor of plaintiff for the sum of twenty-five hundred dollars. The defendant Pacific Auto Stages, a corporation, operates auto stages upon the San Francisco-San Jose highway. The defendant Gallimore is an employee of the defendant corporation, in charge of a bus running from the center of the town of Mountain View to the San Francisco-San Jose highway. The Peninsula Rapid Transit Company also operates stages upon the main highway and transports passengers holding Pacific Auto Stages' tickets. Just prior to the accident, plaintiff purchased a Pacific Auto Stage ticket from its representative, Gallimore. This token entitled plaintiff to transportation from Mountain View to San Jose. The purchase was made at one of the customary places of sale near the point of departure of the San Jose stage, to wit: The stopping site across the highway of the Mountain View bus. Plaintiff inquired the time of the arrival of the next bus from San Jose and the agent replied "soon . . . it is coming—it is here now". Thereupon Gallimore walked with plaintiff in crossing the highway. There is some conflict in the evidence whether Gallimore grabbed or held plaintiff's arm or simply walked beside her as she crossed the highway. Near the point of destination, plaintiff was struck by an automobile and received injuries therefrom. The automobile that struck the plaintiff was operated by a party unconnected with the stage company. Plaintiff testified that after starting to cross the highway she looked straight ahead. If defendant Gallimore, as the agent of defendant corporation, undertook to conduct plaintiff from the point where the corporation had accepted her fare for the purpose of placing plaintiff into or upon the conveyance provided for her transportation, then

it would not be necessary that plaintiff use the same degree of care she would be called upon to exercise if she had crossed without the protection of the defendant corporation's representative. Agent Gallimore assumed a responsibility to protect the plaintiff. This did not relieve plaintiff from the use of ordinary care, but it was for the jury to determine if plaintiff was guilty of contributory negligence. The cases cited by appellant deal with pedestrians, bicycle riders and expassengers of vehicles. The evidence under all the circumstances of this case is not sufficient to warrant a disturbance of the views of the jury upon this issue.

At the conclusion of plaintiff's case, the trial judge was not in a position to say, as a matter of law, that no negligence had been proved. Whether Gallimore negligently conducted plaintiff and whether a safe and suitable place to board the conveyance had been provided, were questions of fact. The motion for a nonsuit was properly denied.

■ Appellant contends that the trial court erred in excluding from the evidence an operating agreement between the Pacific Auto Stages and the Peninsula Rapid Transit Company and in permitting testimony with reference to the customary place of stopping of the buses. The terms of the agreement in so far as applicable to the facts in this case were covered by the testimony of the witness Gallimore. The jury received therefrom a clear and true picture of the relationship between the companies.

■ The custom of stopping at particular points or stations of vehicle carriers is proper evidence. (*Delmonte* v. *Southern Pacific Co.*, 2 Cal. App. 211 [83 Pac. 269].) Through the evidence it was established that the bus that this plaintiff would have entered if she had reached the point of boarding was a bus of the Peninsula Rapid Transit Company. The ticket sold by the defendant company would have been honored by the Peninsula Company; hence the place where the Peninsula bus stopped was material.

Appellant contends that error was committed in twenty instructions in the sixty-odd given to the jury. The opening brief contains the instructions, with portions objectionable to appellant italicized. Brief comments follow each instruction. Many of the comments are found in substance to be repetitions of preceding comments. Only three citations are presented in support of appellant's position. The

objections to the instructions may be epitomized as follows: That the court erred in instructing the jury: First, that the case involved the relationship of common carrier and passenger; second, that portions of the Public Utilities Act were applicable to the case; third, that the common carrier is required to afford protection commensurate with the risks involved when a person resorts to that station or stopping place with the intentions of becoming a passenger; fourth, that certain of the instructions omitted the element of proximate cause; fifth, that the agreement between the two companies had no bearing on the duty of the defendant company to exercise care for the safety of its passengers; sixth, that it was an admitted fact that Gallimore undertook to assist the plaintiff across the highway.

The relationship of carrier and passenger arises when the passenger enters with intent to pay or pays for entrance into the vehicle or carriage. There may be a hiatus in the relationship in instances too numerous to mention but when the purchaser of the rights to be conveyed is in a position to be accepted as a passenger, the relationship is again in force. It is not necessary in order to create the relation of carrier and passenger that the passenger should have actually entered the vehicle. The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure at the appropriate time and the carrier takes some action indicating acceptance of the passenger as a traveler. It is true that carriers of passengers are bound simply to exercise ordinary care as to the condition of the station at which passengers are received (*Falls* v. *San Francisco & N. P. R. Co.*, 97 Cal. 114 [31 Pac. 901]), but if the carrier assumes the responsibility of conducting the purchaser of passenger rights to the point of departure, then the relationship of carrier and passenger exists during such period. In the Falls case the injured party had been waiting for a train. The defendant did not assume to accept her as a passenger until she should board the train. In this case the action of defendant corporation's agent was an invitation to plaintiff to be conducted from the point of sale of the ticket to the point of departure of the stage. The evidence discloses that upon other occasions this plaintiff had been escorted or assisted and other passengers likewise, by Gallimore. Under such

circumstances a greater degree of care is imposed upon the carrier.

Appellants claim that the provisions of the Public Utilities Act are not applicable to this case. The inapplicability has not been pointed out, but counsel leaves us with the mere statement that the instructions are not applicable. ■ The element of proximate cause, though absent from certain instructions, was fully covered in other instructions. The statement of the court that the agreement between the companies did not affect the defendant corporation's liability was correct. ■ If the court erred in instructing the jury that it was an admitted fact that Gallimore undertook to assist the plaintiff across the street, the error consisted only in the use of the word "assist". The evidence proves that he escorted or assisted or led or conducted or accompanied the plaintiff and in several other instructions the jury was plainly told "that if they found that Gallimore conducted", etc. ■ The jury was properly instructed as to the degree of care a carrier owes to the passenger. Lack of instructions or the absence of express authority from the master to the servant is immaterial. "Where the carrier through its employees undertakes to assist a passenger to board or alight from its cars, the passenger has a right to rely on its careful performance of such undertaking and may recover of the carrier for injuries caused by the failure to use proper care." (4 Ruling Case Law, p. 1236, and cases cited.) "Plaintiff having paid the full price for her transportation, with the knowledge, presumptive or actual, that such red cap porter service was part of the consideration entering into the purchase, such service must be held to have been covered by and included in the fare paid for transportation, and the fact that such service might have been dispensed with did not make it gratuitous." (*Franklin* v. *Southern Pac. Co.*, 203 Cal. 680 [59 A. L. R. 118, 265 Pac. 936].) "Carrier having knowledge of the custom is liable though the custom is in violation of its rules." (*Weiland* v. *Southern Pac. Co.*, 1 Cal. App. 343 [82 Pac. 226].) The court instructed the jury that they were to find whether or not Gallimore was within the express or ostensible scope of his employment.

■ From what has been said before we feel justified in determining from all the facts and circumstances of this

particular case that the plaintiff became a passenger upon the payment of the fare; and that immediately the carrier was bound to use the utmost care and diligence for the passengers' safe carriage. (See Civ. Code, sec. 2100.) "The carrier was bound to guard her against such dangers as might reasonably be anticipated or naturally expected to occur." (*Southern Pac. Co.* v. *Ward*, 208 Fed. 385; *Glennen* v. *Boston El. R. Co.*, 207 Mass. 497 [32 L. R. A. (N. S.) 470, 93 N. E. 700].) The evidence indicates the dangers of crossing this particular highway. It was the duty, therefore, of the defendant corporation to supply a reasonably safe place for the departure of the plaintiff passenger.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 28, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal was denied by the Supreme Court on October 26, 1931.