# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1892, IN THE SEVENTY-
SEVENTH YEAR OF THE STATE.

---

No. 566.

## THE LAKE ERIE AND WESTERN RAILWAY COMPANY
### *v.* CLOSE.

RAILROAD.—*Expulsion from Train.*—*Argument of Counsel.*—An action was
instituted by the plaintiff against a railroad company to recover dam-
ages on account of his expulsion from a train. Counsel for the plain-
tiff in the course of his argument used the following language: "The
conduct of the conductor and the railroad employees shows that they
have become like the corporation for whom they work; they have be-
come so hard-hearted and unfeeling that they have no charity for their
fellow-man." The statement was objected to at the time by counsel for
the defendant, but the court overruled the objection, with the observa-
tion that the language was fairly justified by the evidence.
*Held,* that there was not such an abuse of the discretion vested in the court
concerning the argument of counsel, as to justify a reversal of the judg-
ment.
SAME.—*Consequential Damages.*—Where, in such an action, the evidence
showed that the plaintiff was ejected from the train at a distance from
any station, and had to walk a number of miles to reach his destina-
tion, he is entitled to recover damages for any injuries that may have
resulted to him on account of his long and fatiguing walk.
SAME.—*When Passenger Without Ticket may be Charged Higher Rate.*—It is

(444)

The Lake Erie and Western Railway Company *v.* Close.

only where a railroad company affords a reasonable opportunity to a passenger to purchase a ticket that it will be allowed to charge such passenger a higher rate of fare, because he is without a ticket.

INSTRUCTIONS TO JURY.—*How Must be Signed.*—Section 533, R. S. 1881, requires all instructions requested by a party to be signed by such party or his attorney, and instructions not so signed may be refused without regard to their merits.

From the Delaware Circuit Court.

*R. S. Gregory, A. C. Silverburg* and *W. E. Hackedorn,* for appellant.

*G. W. Cromer,* for appellee.

CRUMPACKER, C. J.—Close obtained a judgment against the railroad company for $800, for wrongfully ejecting him from one of its passenger trains. The company appeals and relies for the reversal of the judgment upon grounds assigned in the motion for a new trial.

It was shown by the evidence that appellant's railroad runs through the village of Redkey, in Jay county, and through the city of Muncie, in Delaware county. In March, 1891, appellee resided with his family at the village of Dunkirk, about five miles from Redkey, but he was engaged as a laborer in a glass manufactory at Muncie. His employment required him to work nights, and it was his custom to go to his home Saturdays and return to his work on the following day, which he usually did by taking passage on a passenger train leaving Redkey for Muncie on appellant's road, a few minutes after noon, and he then remained at Muncie until the next Saturday. The regular ticket fare from Redkey to Muncie was fifty-five cents, but appellant had a rule requiring passengers, without tickets, to pay ten cents extra, which rule was known to appellee. On a Sunday in March, 1891, appellant walked from his home at Dunkirk to Redkey, for the purpose of obtaining transportation upon the noon train to Muncie, that being the only train which would convey him to Muncie in time to enter upon his work, which commenced at 6 o'clock P. M. There was evidence fairly authoriz-

ing the jury to find that appellee arrived at the depot at Red-
key a reasonable time before the departure of the train and
attempted to purchase a ticket for Muncie, but the ticket
office was closed and the agent was upon the depot platform,
waiting for the train to arrive. Appellee went to the agent
and requested a ticket, but was told to pay his fare on the
train. He replied that it would cost sixty-five cents on the
train and he had only fifty-five cents, the price of a ticket,
but the agent said the conductor would carry him for that
sum, and declined to sell him a ticket, although he had ample
time so to do before the arrival of the train, and also attend to
his duties at the train, after appellee made the request of
him. Being unable to procure a ticket, appellee embarked
upon the train when it was ready to depart, and after it had
gone some distance on the way, the conductor came to him
to collect his fare, whereupon he tendered the conductor the
price of a ticket from Redkey to Muncie, and requested to
be carried to the latter place, but the conductor declined to
accept the tender and demanded ten cents more, and said he
was required to do so by the rules of appellant, and unless
it was paid he would stop the train and expel appellee there-
from. Appellee expostulated with the conductor, and ex-
plained how he came to be without a ticket, and told him
it was important that he should be at Muncie that evening,
and offered the conductor all the money he had—fifty-eight
cents—if he would carry him, but that functionary refused
and stopped the train, violently seized appellee by the arm,
conducted him to the platform of the car and shoved him
off, saying as he did so : " That's the way you'll get there ;
that's the way you'll ride on the train ; next time you come
bring more than fifty-five cents with you, will you." There
were other passengers on the train who witnessed the occur-
rence. Appellee was ejected from the train, in the country,
at a point about sixteen miles from Muncie, and as his work
required him at six o'clock that evening and by failing to
report he was liable to lose his position, and there being no

other means of transportation, he set out to walk the distance, which he accomplished, arriving in Muncie about six o'clock. The ground was covered with a light snow, and appellee's feet became wet, and he was so injured and exhausted by his expulsion from the train and the fatiguing walk, that he suffered severely with cramps and pains, but continued to work for a few days, when his condition became such that he was compelled to abandon his work altogether, and he had not fully recovered at the time of the trial, May 7th, 1891.

The first point pressed upon the notice of this court is the alleged misconduct of appellee's counsel in the argument of the cause to the jury. It appears from the bill of exceptions that in the course of his argument, while discussing the manner in which appellee was expelled from the train, counsel made use of this language: "And so I think, gentlemen of the jury, that the conduct of this conductor and these railroad employees shows that they have become like the corporation for whom they work; that they have become so hard-hearted and unfeeling that they have no charity for their fellow-man." The statement was objected to at the time, but the court overruled the objection, with the observation that it was fairly justified by the evidence. It is not practicable to confine arguments in the trial of a cause to a punctilious observance of the rules of debate, but they must be left in some measure to the sense of honor and duty of the advocate, under the discretionary control of the trial court, and there must have been a clear violation of the rules of fair discussion to justify an appellate court in disturbing a judgment upon that ground. *Postel* v. *Oard,* 1 Ind. App. 252.

In the present case, the sense of degradation and shame appellee experienced in being expelled from the train in the presence of other passengers, was an important factor in estimating his damages, and the manner of his expulsion was certainly a legitimate subject of comment. The remarks

made by the conductor at the time were such as to augment the indignities borne by appellee, and the characterization of the conductor as "hard-hearted and unfeeling" was justified, assuming, as counsel had the right to, that appellee's version of the occurrence was true. The allusion to appellant as a corporation devoid of emotions of human sympathy was not such a transgression of the rules of legitimate argument as would justify the reversal of the judgment.

It is next insisted that the damages awarded by the jury are excessive, in that appellee should not have been allowed anything for the injury resulting from his walk to Muncie. The argument is that such injury is consequential, and too remote to be charged to the wrongful expulsion of appellee.

There is a decided conflict among the authorities upon this question, both sides having the support of adjudications of high standing and respectability. It is conceded by all that the perpetrator of a wrongful act is answerable for all of the injurious consequences that flow from such act in the natural and ordinary course of events, though they may be promoted or enhanced by intervening causes, provided the original wrongful act is responsible for the intervening causes. This doctrine was first declared in the famous case of *Scott* v. *Shepherd*, 2 W. Bl. 892, and is now generally recognized, but the difficulty lies in its application.

In the present case appellee was wrongfully ejected from the train, at some distance from any station, and it was to have been expected that he would do that which common prudence would dictate, considering all of the surroundings. In view of his situation, the jury had the right to infer that his conduct in walking to Muncie was entirely natural and reasonable. His expulsion from the train was the proximate and responsible cause of his fatiguing journey on foot, and that in turn augmented his afflictions. The original wrongful act was, in the sense of the law, directly responsible for the train of injuries caused by it, including any illness or exhaustion resulting from the long walk.

This doctrine has found favor with many courts in this country, including the Supreme Court of this State, and it must now be regarded a settled principle in our jurisprudence. The subject is ably discussed in the case of *Cincinnati, etc., R. R. Co.* v. *Eaton*, 94 Ind. 474, a case in many respects similar to the one in judgment, and the court concludes as follows: " If, therefore, without being able to procure a conveyance, and acting with prudence and care, the appellee proceeded on foot to complete her journey, and thereby, and as incidental thereto, received injuries, and incurred vexatious annoyances, she became entitled to have those injuries and annoyances taken into consideration in estimating her damages in the event of a verdict in her favor."

The same application of the doctrine was made in *Brown* v. *Chicago, etc., R. W. Co.*, 54 Wis. 342; *East Tennessee, etc., R. R. Co.* v. *Lockhart*, 79 Ala. 315; *International, etc., R. R. Co.* v. *Terry*, 62 Tex. 380; *New Orleans, etc., R. R. Co.* v. *Hurst*, 36 Miss. 660.

The theory of this case is that appellant had no right to deny appellee the privileges and protection of a ticket passenger, because he was without a ticket through the wrong of appellant's agent. It is only where a railroad company affords a reasonable opportunity to a passenger to purchase a ticket that it will be allowed to charge such passenger a higher rate of fare because he is without a ticket. Such opportunity was not afforded in this case, and in view of the circumstances attending the case as a whole, it can not be said that the damages are excessive.

It is finally claimed that the court erred in refusing certain instructions requested by appellant. The bill of exceptions shows that these instructions, at the time they were rejected, were not signed either by appellant or its attorneys, but they were signed after the jury retired for deliberation. Section 533, R. S. 1881, requires all instructions requested

by a party to be signed by such party or his attorney, and it has been repeatedly decided that instructions not so signed may be refused without regard to their merits. *Board, etc.,* v. *Legg,* 110 Ind. 479; *Hutchinson* v. *Lemcke,* 107 Ind. 121; *Stott* v. *Smith,* 70 Ind. 298.

In reviewing the action of a trial court, regard must always be had to the condition of the record at the time such action occurred, and if it can be supported by any substantial reason or fair presumption it will be upheld. This court may presume that the court below rejected the proffered instructions because they were not signed.

The judgment is affirmed.

