## Tilburg, Appellant, *v.* Northern Central Railway Company.

*Negligence—Railroads—Passenger—Ejectment of passenger from train —Nonsuit.*

The servants of a carrier should not expel a passenger at a time or place which is dangerous, and the carrier will be liable in such a case not only for injuries directly suffered in connection with such expulsion, but also for subsequent injuries proximately due thereto, such as injury from other trains which the ejected person could not reasonably avoid, the probable consequences of improper exposure, and the like.

· A passenger who had purchased a ticket was unable to find it on his person when the conductor demanded it. Two persons stated to the conductor that they saw the ticket purchased. The conductor subsequently made a second demand for the ticket, and when the passenger's destination was reached he prevented him from leaving the train, demanding either the ticket or the fare. When this was refused he carried the passenger to the next station, which was a flag station, where he ejected him, shoving him from the train. The night was dark and stormy and the station and its neighborhood was unknown to the passenger. He started to walk back along the railroad to the station of his destination. He was not afterwards seen alive. His body was found with marks on it, indicating that he had been struck and killed by a locomotive. *Held,* that it was error to enter a nonsuit.

Argued March 18, 1907. Appeal, No. 313, Jan. T., 1906, by plaintiff, from order of C. P. Lycoming Co., Dec. T., 1905, No. 247, refusing to take off nonsuit in case of Mary Tilburg v. Northern Central Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before HART, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Otto G. Kaupp*, with him *M. C. Rhone*, for appellant.—A railway company owes a duty to every passenger who, in good faith, purchases a ticket and enters any of its conveyances. If

the conveyance is one which, by the contract, the passenger has no right to take, its duty is to inform him and put him off at a proper place: Lake Shore & Michigan Southern Ry. Co. v. Rosenzweig, 113 Pa. 519 ; Arnold v. Penna. R. R. Co., 115 Pa. 135; Pennsylvania Co. v. Toomey, 91 Pa. 256 ; Penna. R. R. Co. v. Kilgore, 32 Pa. 292.

The deceased was not put off at a proper place: Malone v. Pittsburg & Lake Erie R. R. Co., 152 Pa. 390; R. R. Co. v. Werner, 89 Pa. 59.

This court has held many times that where one is put in a position of embarrassment and difficulty by the negligence of a railroad company, he is not bound to use the best judgment, but only good faith and reasonable prudence : Stover v. Penna. R. R. Co., 195 Pa. 616 ; Malone v. Pittsburg & Lake Erie R. R. Co., 152 Pa. 390 ; Doyle v. Chester Traction Co., 214 Pa. 382 ; Russell v. Westmoreland County, 26 Pa. Superior Ct. 425.

If returning to Cogan Valley on foot on and along the tracks of appellee was a natural and reasonable thing for Tilburg to do under all the circumstances, then it was a course of action which the conductor should have foreseen, and the consequences which attended the effort are not too remote to be considered in the computation of damages: Hoag v. R. R. Co., 85 Pa. 293 ; Morgan v. Electric Co., 213 Pa. 151.

*Seth T. McCormick,* for appellee.—Except at crossings where the public have a right of way, a man who sets his foot upon a railroad track, does so at his peril.   The company not only have the right of way, but such right is exclusive at all times and for all purposes: Mulherrin v. R. R. Co., 81 Pa. 366, 375 ; Ry. Co. v. Collins, 87 Pa. 405 ; R. R. Co. v. Norton, 24 Pa. 465 ; R. R. Co. v. Hummell, 44 Pa. 375 ; Ham v. Canal Co., 155 Pa. 548.

OPINION BY MR. JUSTICE MESTREZAT, April 22, 1907 :

This is an action of trespass to recover damages for the death of Robert D. Tilburg, the plaintiff's husband.   In the afternoon of January 3, 1905, he and his son Edward purchased tickets at Williamsport, Lycoming county, over the defendant's road for Cogan Valley station.   At the same time

one Charles Stamets purchased a ticket for Haleeka, a flag station about one mile beyond Cogan Valley, and the three parties entered and took seats together in a coach of the same train. Soon after the train left Williamsport, the conductor asked Tilburg for his ticket who, after searching his pockets, informed the conductor that he had a ticket for Cogan Valley but was unable to find it. The conductor then told Tilburg to look for his ticket and he would return, which he shortly did after taking up the tickets of the other passengers. He again asked Tilburg for his ticket and was again informed by Tilburg that he had a ticket but could not find it. The conductor then made inquiry of Stamets, who was present when Tilburg purchased his ticket, and was informed by Stamets that Tilburg had purchased a ticket from Williamsport to Cogan Valley. The son, Edward Tilburg, also gave the conductor the same information. About that time the brakeman announced Cogan Valley station. Edward Tilburg arose from his seat to leave the train and went to the door of the coach and on the platform. At the same time his father got up from his seat but the conductor stood at the entrance to the seat with his hand on Tilburg's shoulder, demanding the ticket or the fare, and would not permit Tilburg to leave the coach, telling him that he, the conductor, must have the ticket or the fare before they came to the next stop " or he would take care of him." The train stopped only a minute at Cogan Valley. Edward Tilburg alighted, but his father was still on the train. The conductor continued to demand the ticket or payment of his fare until the train arrived at Haleeka, where it stopped. Here the conductor put Tilburg off the train. Stamets who was present and also alighted from the train says that the conductor shoved Tilburg " down off the step." This was at five o'clock in the evening and it was dark. Edward Tilburg testified that " it was storming when the train left Williamsport, and that in the evening it was snowing and blowing terrible cold; very cold, the coldest day we had last winter;" that it had been storming since the day before; and that there were four inches of newly fallen snow on the ground. Stamets testified: " Q. Standing at the Haleeka flag station, at the point where Robert Tilburg was ejected, at the time that you say that he was ejected, what

could you see of the surrounding country ? A. Couldn't see anything. Q. Why? A. It was dark and stormy and the wind was blowing very hard, and you couldn't see anything." Stamets says there was no house or place of shelter at the station. Tilburg was a stranger in that community, and had never been at the station before. The conductor gave him no information as to where he could find shelter or how he could return to Cogan Valley. After he had been ejected from the coach, Tilburg asked Stamets if he knew how he could get back to Cogan Valley station, and Stamets told him "the only way I knew was to go back down the railroad, because I didn't know any more about it than he did." The evidence does not disclose that there was any station house or other buildings at Haleeka in which Tilburg could secure shelter or protection from the storm, or in which he could remain during the night. Nor did it appear whether there were any roads in that vicinity, or that there was any other practicable or safe way than the railroad by which Tilburg could have returned to Cogan Valley.

After Tilburg had been ejected from the train, he started to return to Cogan Valley by way of the railroad. He was not again seen until his body was found along the railroad track the next morning about a quarter of a mile from Haleeka station. The ticket he had purchased at Williamsport for Cogan Valley was in his pocket. Fifteen or twenty minutes after Tilburg's ejection from the train a freight train passed towards Williamsport, the direction in which Tilburg was walking. The evidence tended to show that he was killed by being struck by a locomotive.

Upon these facts, the learned trial judge granted a nonsuit which he subsequently refused to take off. The nonsuit was granted solely on the ground that the plaintiff had failed to show affirmatively that the deceased could not have returned to Cogan Valley except by walking on the railroad track. The learned court in its opinion refusing to take off the nonsuit held "that it was the duty of the plaintiff to affirmatively show the necessity of the deceased to follow the railroad track, towards his place of destination, and having totally failed so to do we granted the compulsory nonsuit now under consideration."

We cannot agree with the learned trial judge in the disposition he made of this case. Having purchased the ticket and having taken his place in the coach of the defendant's train, Tilburg became a passenger and it was the duty of the defendant's servants to treat him as such. The conductor was informed by Edward Tilburg and Stamets that Tilburg had purchased a ticket which entitled him to be carried from Williamsport to Cogan Valley. It was his duty when requested to deliver his ticket, and, after being given a reasonable time to find it and failing to produce the ticket or pay his fare, the conductor could have expelled him from the train. This could have been done at Cogan Valley station, Tilburg's destination, which the train. at the time was approaching and at which it subsequently stopped. Tilburg desired to leave the train at that station but was prevented by the conductor. This action on the part of the conductor was a clear misapprehension of his duty and an infringement of the rights of Tilburg. The train stopped at the station but a moment, hardly giving Tilburg an opportunity to alight if he had not been prevented from doing so. The train moved on, and the next station is a flag station. Here the conductor exercised his authority and, if the only testimony submitted is believed, forcibly ejected Tilburg from the train, at a time and place and under circumstances which a jury would have been fully justified in finding endangered the life of the passenger. If the case had been submitted, and the jury had so found, it would clearly have been negligence on the part of the carrier company : 2 Hutchinson on Carriers (3d ed.), sections 1082, 1084. In 6 Cyclopedia of Law and Procedure, 563, it is said : " The servants of the carrier should not expel a passenger (or even a trespasser) at a time or place which is dangerous, and the carrier will be liable in such a case not only for injuries directly suffered in connection with such expulsion, but also for subsequent injuries proximately due thereto, such as injury from other trains which the ejected person could not reasonably avoid, the probable consequences of improper exposure, and the like."

Under the facts disclosed by the evidence it was, therefore, a question for the jury to determine whether the conductor had exercised the care required of him in expelling the passenger from the train at Haleeka flag station : 2 Hutchinson

on Carriers (3d ed.), sec. 1083. As said by Mr. Justice Gordon in delivering the opinion of the court in Arnold v. Pennsylvania Railroad Co., 115 Pa. 135 : " In the case in hand, the duty of the conductor, in expelling the plaintiff from the cars at the time and place selected for that purpose was certainly one that was not strictly defined. It may be admitted that as a faithful officer he was obliged to eject Arnold from the train, but then the very important question arises, did he, as the company's employee, properly discharge this obligation in dismissing the plaintiff from the car between the tracks of the railroad, on a very dark night, at a way station that, from the want of light in or about it, could not be seen ? As everything in this proposition depends upon facts and circumstances, its solution was for the jury." In the case at bar, while it is true the expulsion took place at five o'clock in the afternoon, it was a January evening, and the uncontradicted evidence shows that it was dark, the lights were shining at Cogan Valley as the train passed. There were no lights at Haleeka station. A fierce storm was at the time, and had been since the previous day, prevailing in that community. The weather was extraordinarily cold and the country was covered with snow to an extent which rendered it difficult to see any paths or roads which might exist at that place or might lead in the direction of Cogan Valley station. Under these circumstances, the duty of the conductor towards a passenger or even a trespasser upon his train certainly could not be determined as a matter of law by the court so as to justify the conductor's action in expelling Tilburg from the train. If it had clearly appeared by the evidence of the plaintiff, and there is no other evidence in this case, that the passenger had been ejected in daylight and under circumstances which gave him an opportunity to protect himself from danger in returning to Cogan Valley, we would have another and an entirely different question before us. The plaintiff has shown the place where her husband was ejected and the conditions under which he was ejected, and the facts as disclosed by her testimony are clearly sufficient to go to the jury on the question of the negligence of the defendant's servants in expelling the deceased from the train. If, as contended by the defendant company, the deceased was expelled from the train at a safe place and under

conditions which did not make the expulsion unsafe, those facts must be made to appear by testimony. It was not the province of the court to surmise whether there were roads leading from or to Haleeka station, or whether there were highways leading from that station to Cogan Valley, or whether there was a station house at Haleeka, or whether there was a club house or other houses in that vicinity. These were matters which were not shown by the testimony and which, therefore, did not justify the court in withdrawing the case from the jury.

After Tilburg had been expelled from the train he was required to use reasonable and ordinary prudence in seeking shelter and in attempting to return to Cogan Valley. Under the circumstances, it was not negligence per se for him to walk on the railroad in going from Haleeka to Cogan Valley. As said in Ham v. Delaware & Hudson Canal Co., 155 Pa. 548, the cases cited by appellee which hold that a man who steps his foot on a railroad track except at a public crossing does so at his peril have no application to the facts presented here. If, as alleged by the plaintiff, her husband was put off the train at Haleeka station at a time and under circumstances which imperiled his life, he was not guilty of negligence if in escaping from the position in which he had been placed he acted as a reasonably prudent man in walking on the defendant company's tracks. As pertinent and applicable to the facts of this branch of the case, we may here quote the language of the present chief justice in Ham v. Delaware & Hudson Canal Co., 155 Pa. 548, 553 : " The substantial controversy in this case is upon the standard of conduct required of a man who, like Ham, is wrongfully put on a railroad track, as to the time and manner of getting off. The learned judge below told the jury concisely in affirming the plaintiff's thirteenth point, that ' all the care that was required of Ham after being put off the car was simply the ordinary care and diligence of a reasonably prudent man under the circumstances ; ' and again in affirming the defendant's twenty-second point, that ' when Ham was placed upon the track it was his duty to leave the same at the earliest practical (practicable) moment, and if he did not do so, he was guilty of contributory negligence. . . . That this was the proper rule for the guidance of the jury does

not admit of question.   Ham as already noted was put in a place of danger without fault of his own ; he was bound to use care, diligence and judgment to get out at the first opportunity ; but using these he was not chargeable with responsibility for the result, and the standard of the care, diligence and judgment he was bound to use was the common standard of the ordinary prudent and careful man."

What avenue or avenues of escape were presented to Tilburg that night, and whether he exercised prudence and care in selecting the railroad as the way for reaching his destination after his ejection from the train, were questions for the jury.   He was a stranger there, and the darkness prevented him from seeing the real conditions as they existed.   Snow covered the earth and hid from his view what lay beneath. Would a reasonably prudent man, under the circumstances, have started out into the darkness and the storm to hunt roads or paths unknown to him and which might have existed and thus subject himself to the dangers of the holes and pitfalls which might have been open to receive him, or would he have taken the direct route which lay along the defendant's tracks to travel the mile required to reach his destination ?   Again we may be permitted to quote as pertinent in this connection what was said in the Ham case (p. 555): " Whether a safe road was there or not was only a part of the question.   There still remained whether Ham, with ordinary diligence and prudence could have seen it, and seeing ought to have taken it.   A man familiar with the locality may take an uninviting path, knowing it will lead him aright, while a careful man not knowing how it may turn out, nor even whither it may lead, may well be exonerated from negligence in not making the experiment, though it would in fact have been the best thing to do.   The elements of prudent conduct on the part of Ham were too many and too varied to be determined except by the jury, and the rule laid down for the jury's guidance was in accordance with the settled law."

Malone v. Pittsburg & Lake Erie Railroad Co., 152 Pa. 390, was an action for personal injuries by a woman who was wrongfully ejected from a train upon which she was a passenger at a regular stopping place where there was no station house but only a box car used temporarily as a station.   A storm was

prevailing at the time she was ejected. She started to walk back to the station from which she had started and on the way was overtaken by a storm which injured her health. In affirming a judgment for the plaintiff, the present chief justice says (p. 393): "We start with the fact established by the verdict that plaintiff was wrongfully put off the train, at a regular station to be sure, but one where she was a stranger and where there was at the time no regular station house. She was in no fault herself, and being thus put in a position of embarrassment and difficulty, she was not bound to use the best judgment, but only to good faith and reasonable prudence: Penna. R. R. Co. v. Werner, 89 Pa. 59."

Whether the servants of the carrier company were guilty of negligence in carrying Tilburg beyond Cogan Valley station or in putting him off at Haleeka station, which in either case proximately resulted in his death, and whether he exercised the care required of him after he had alighted at Haleeka station are questions which should, under proper instructions, have been submitted to the jury. The nonsuit was improperly granted, and the judgment must be reversed.

The assignments of error are sustained, the judgment is reversed, and a procedendo is awarded.