Louisiana & Arkansas Railway Company v. Rider.

Opinion delivered April 22, 1912.

1. Carriers—injuries to passengers—proximate cause.—Where passengers, a husband and wife, by mistake of the trainmen, were put off the train at night at a station six miles distant from their destination, and, desiring to reach home that night and being unable to procure a conveyance, walked home, the inconvenience and physical injuries which they suffered were proximately caused by the negligence of the carrier. (Page 561.)

2. Same—misleading instructions.—Where, in an action against a carrier for injuries to passengers who were induced by the trainmen's negligence to leave the train before reaching their destination, there was no contention that plaintiffs were forcibly ejected, an instruction authorizing a recovery for injuries caused by being put off the train could not have misled the jury as submitting the issue of a forcible ejection. (Page 562.)

3. Same—damages to passengers.—Where a man was induced to leave the train before reaching his station, and walked to his home six miles distant, carrying a valise weighing fifteen or twenty pounds, and suffered no inconvenience from the walk except a little stiffness, a verdict of $100 damages was excessive, and must be reversed unless a remittitur of $75 is agreed to. (Page 562.)

4. Same—damages to passengers.—Where a woman was induced to leave the train before reaching her station and walked home six miles distant, with her husband, and was thereby made sick for a few days,

but her illness was neither serious nor permanent, an award of $400 was excessive, and will be reversed unless a remittitur of $200 is entered. (Page 563.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed on remittitur.

*Henry Moore* and *Henry Moore, Jr.,* for appellant.

1. The court's third instruction was erroneous in that it assumed that appellees were put off the train, and left it for the jury to decide whether appellees were compelled to walk from Hafton to Patmos.

2. The verdict is so grossly excessive as to show on its face that it was the result of passion and prejudice. 67 Ark. 130; 69 Ark. 187; 81 Ark. 430; 88 Ark. 203; 94 Ark. 326; 47 La. Ann. 257; 105 U. S. 229; 6 Wallace, 94; 96 Ark. 84; Sutherland on Dam., 148-157; Field's Law on Damages, § 21; Shearman & Redfield on Negligence, § 25; 8 Am. & Eng. Enc. of Law (2 ed.) 605; 13 Cyc. 71; 66 Ark. 279; 67 Ark. 112.

*T. C. Jobe* and *W. P. Feazel,* for appellees.

1. Appellant's objections to the court's third instruction are untenable because the objection that it assumed that appellees were put off the train was not raised in the lower court. 96 Ark. 638. And, under the proof in the case, it was proper to leave it to the jury whether they were compelled to walk from Hafton to Patmos. Certainly, under the circumstances, it was not incumbent on appellants to remain overnight with strangers rather than with reasonable exertion and at some inconvenience to themselves walk the required distance to their young children and their home. 94 Ark. 324; 81 Ark. 431; 88 Ark. 200; *Id.* 326; 83 Ark. 588. See also 125 Ky. 24; 100 Mo. 555; 21 Mo. App. 99; 32 Wis. 524; 91 Mich. 523; 34 S. W. 904.

2. The verdict is not excessive.

McCULLOCH, C. J. Plaintiffs, M. L. Rider and his wife, R. V. Rider, instituted this action against the defendant railway company to recover damages sustained on account of alleged negligence of the servants of defendant in causing them to debark from the train at a station short of their destination. The trial jury returned a verdict in their favor, and defendant appealed.

No question is raised as to the two causes of action being joined in one action.

Plaintiffs resided at Patmos, Arkansas, a small village on the line of defendant's railroad, and went to Stamps, Arkansas, on a visit. Mrs. Rider had been absent from home three days, and on the day of the occurrence now under investigation Mr. Rider went to Stamps on the morning train after her, and they returned together on the evening train, which left Stamps about 8 o'clock and reached Patmos half an hour or so later. They had three daughters, the eldest eighteen years of age, and the youngest eleven, who remained at home alone, and expected their parents to return on the evening train. Their dwelling-house was something over a fourth of a mile from the station. When the train reached Hafton, a station about six miles from Patmos, and as it slowed down, the conductor called the station "Patmos," and picked up the stool, and called to the plaintiffs to come on. They followed the conductor out, and as soon as they stepped from the train, it started and pursued its journey, and after a few minutes plaintiffs discovered that they had debarked at the wrong station. It was dark at the time, and they did not realize, until they had gotten off the train and walked a short distance, that they were at the wrong station, and then it was too late, as the train had pulled out. They were not acquainted with any one at Hafton, but met two men, and inquired of one of them for a conveyance of some kind to drive home, and, being told that none could be procured and that the road was too bad to travel at night, they decided to walk home along the railroad. After walking a short distance, one of the men called to them and invited them to stay all night with him, but they declined to do so. They had promised their daughters to return home that night, and, never having left them alone before, they were anxious to reach home, and therefore decided to make the journey. Hafton was a very small village, having a saw mill and nine dwelling houses. The plaintiffs testified that they had heard that the saw mill had been moved away, and that there were few people living there.

These are the facts which the testimony of the two plain-

tiffs tended to establish, though there is a conflict in the evidence on all issues.

It is contended that the inconvenience and alleged physical injuries resulting from the walk home did not proximately result from the alleged act of negligence, but resulted from the voluntary act of plaintiffs themselves in deciding to undergo the journey, instead of accepting the invitation to remain at Hafton, and that the same should not be considered an element of damages in this case. That contention can not be sustained. Plaintiffs were induced to leave the train at a strange place in the night, and were confronted with an emergency which justified them in deciding to walk home, instead of remaining there. Hafton was a sparsely settled village, and they were among strangers, and, in addition to that, had left their daughters at home, and it was not unreasonable for them to undergo the inconvenience of walking home, rather than to remain there during the night. There was no particular danger threatening them in attempting the journey, and it was the reasonable and natural thing for them to do. It is said, however, that Mr. Rider should have undertaken the journey alone, so as to go home to his daughters, and left his wife at Hafton upon the invitation of the strangers. We do not think it was unreasonable for Mrs. Rider under those circumstances to insist upon going home, rather than to be left among strangers.

In *St. Louis Southwestern Ry. Co.* v. *Knight*, 81 Ark. 431, we said:

"The negligence of defendant's employees put plaintiff suddenly in a situation that he was compelled to decide at once whether he would remain on the train and go away from the station to which he wished to go or walk back to the station, and we can not say under these circumstances that he acted imprudently in deciding to walk, or that he assumed the risk of doing so."

And in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Evans*, 94 Ark. 324, it was said:

"Appellee should not be permitted to recover damages augmented by her own act in unnecessarily or negligently exposing herself to hardships and suffering; but she was not bound to suffer the inconvenience of remaining overnight away

from home and child when she could, by reasonable effort and inconvenience, get home earlier."

Error is assigned in giving the following instruction:

"If you find for the plaintiffs, you will assess the damage of the plaintiff, M. L. Rider, in a separate verdict, at such sum as in your judgment will be a fair compensation to him for the inconvenience and annoyance which you find he underwent or suffered by reason of being put off the train before he had reached his destination, and for the soreness and fatigue which you find he underwent by having to walk to his station in the night time, if you find he did have to so walk. If you find for the plaintiff, Mrs. R. V. Rider, you will assess her damages in a separate verdict at such a sum as in your judgment will be a fair compensation to her for the inconvenience and sickness, if any be shown, which she underwent by reason of being put off said train before she had reached her destination, and by reason of being compelled to walk to her station in the night time, if you believe she was so compelled to walk."

The objection made to this instruction is that it erroneously submitted the question of the plaintiffs being "put off the train," and it is argued that the jury might have understood this to refer to a forcible ejection from the train, whereas there was no evidence of that. We hardly think that the use of those words could have been so understood, for there was no contention in the case that the plaintiffs had been ejected from the train. Plaintiffs testified that the station was called, and that they were notified to leave the train at the place which was thought to be their station. There is no contention as to anything in the case except negligence in calling the wrong station, and no contention that they were forcibly put off the train; therefore, the jury could not have been misled.

It is urged that the damages assessed are excessive. The jury awarded damages to Mr. Rider in the sum of $100 and to his wife in the sum of $400. We are of the opinion that the damages in both instances are excessive. Mr. Rider suffered no injury except the mere inconvenience of walking six miles and carrying his valise, which he said weighed fifteen or twenty pounds. It was a starlit night, and the weather was pleasant and not inclement. Mr. Rider says that he was

a little sore and stiff for a day or two, but suffered in no other respect from the effects of the journey. In *St. Louis Southwestern Ry. Co.* v. *Knight, supra*, where the plaintiff walked about two miles through the rain, and was made sick, we affirmed a judgment for damages in the sum of $75. Judge RIDDICK, speaking for the court, said:

"If there was nothing but the fact of the walk back to the station, a distance of two miles, the judgment would be excessive, but plaintiff suffered an attack of sickness as consequence of exposure to rain."

In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Evans. supra*, plaintiff being a lady who was required, on account of the negligent act of the company, to travel in a buggy a distance of about twelve miles on a cold afternoon, we affirmed a judgment for $87.50.

We think the assessment of $100 damages merely for walking a distance of six miles under the circumstances was clearly excessive. There is no exact rule whereby damages for an injury or inconvenience of this kind can be measured, and it must be left, to some extent, to the sound discretion of the jury; yet, where the amount allowed is manifestly excessive, it is our duty to set aside the verdict and allow such sum as we think is reasonable. If the jury had allowed only $25, we would affirm the judgment. Therefore, we can let the judgment stand for that amount if plaintiff elects to enter a remittitur and accept that amount. *St. Louis, I. M. & S. Ry. Co.* v. *Snell*, 82 Ark. 61.

The hardships of the journey were greater to Mrs. Rider, and the evidence tends to show that she not only walked home with much greater difficulty, but that she was nervously prostrated and made sick. A physician was called to attend her, and she was sick in bed several days. Her injuries were not at all serious nor permanent, nor does it appear that she suffered very greatly, and we think that $400 was, by far, too much damages to allow. The sum of $200 is the greatest assessment that we think the testimony would warrant, and judgment will be affirmed for that amount. If the plaintiffs will, within fifteen days, remit the judgment down to the amounts indicated, the same will be affirmed; otherwise the case will be remanded for a new trial.