## LEE LINE STEAMERS v. PAGE.

(Circuit Court of Appeals, Sixth Circuit. November 16, 1916.)

No. 2835.

1. Shipping ⬳165—Carriage of Passengers—Duty of Care.
    While a steamship company is not liable for its failure to land a passenger at a regular stop, to which she had engaged transportation, where because of stress of weather it was dangerous so to do, nevertheless it is the duty of the company to inform the passenger that the boat could not stop at such place, and not to deceive her as to the landing, and thus induce her to debark at a place other than her destination, and, having done so, is liable for damages proximately resulting from its breach of duty.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 534–537; Dec. Dig. ⬳165.]

2. Shipping ⬳166(5)—Carriage of Passengers—Proximate Cause.
    Through stress of weather a steamship company was unable to make a landing at a regular stop, which was a passenger's destination, and on making a landing at another point deceived the passenger into debarking there under the belief that it was her destination. The passenger, a woman used to outdoor work, being unable to procure a conveyance, started to walk back to her destination. After traversing about two-thirds of the

distance she met her husband, and the two proceeded a few miles to their home. The passenger was caught in a rainstorm, and as a result of exposure suffered injuries, including a miscarriage. *Held*, that it could not be determined as a matter of law that the company's breach of duty was not the proximate cause of the resulting injuries.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 550; Dec. Dig. ☞166(5).]

3. CARRIERS ☞277(1)—CARRIAGE OF PASSENGERS—DAMAGES.

For the failure of a common carrier to carry passengers to the right destination, consequential damages, where no independent cause intervened to produce the injury, may be recovered.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1082; Dec. Dig. ☞277(1).]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Hannah Page against the Lee Line Steamers. There was judgment for plaintiff, and defendant brings error. Affirmed.

McKellar & Kyser, of Memphis, Tenn., and Stephens, Lincoln & Stephens, of Cincinnati, Ohio (Charles H. Stephens, of Cincinnati, Ohio, of counsel), for plaintiff in error.

Milton J. Anderson and Ike W. Crabtree, both of Memphis, Tenn., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SESSIONS, District Judge.

SESSIONS, District Judge. Plaintiff is a colored woman and lives with her husband and children at Edmondson, a little place in Arkansas about six miles back in the country from Scanlan Landing on the Mississippi river. On Monday, February 1, 1915, she and two of her children, aged 15 and 17 years, respectively, purchased tickets and took passage on one of defendant's boats from Greenville, Miss., to Scanlan, which was a regular stopping place for the boat. She had previously written her husband to meet her and the children at Scanlan with a conveyance to carry them and their luggage to their home at Edmondson. The boat was due to reach Scanlan some time between Wednesday noon and Thursday noon. Plaintiff's husband went to Scanlan Wednesday, and, finding that the boat had not arrived, sent the conveyance back to Edmondson, but arranged with the owner thereof for its return upon request by telephone. Thursday morning, while plaintiff's husband was waiting at Scanlan Landing, the boat passed that place without stopping and proceeded about 1½ miles upstream to a landing called Womack. The officers of the boat claimed that a strong wind then blowing made it dangerous to attempt to land at Scanlan.

According to the testimony of plaintiff and her two children, which must have been believed by the jury, she was not notified that the boat would not stop at Scanlan; but after passing that landing, and when approaching Womack, she was told by the porter that the latter landing was Scanlan and was the place where she was to disembark. At first she expressed doubt as to the place being Scanlan; but, after being

again assured by the porter that it was, she and her children left the boat at Womack. When they discovered that they had not landed at Scanlan, the boat had departed. After making such discovery they started on foot for Scanlan, carrying a heavy suit case and two other parcels of luggage. They lost their way, and traveled four or five miles before reaching Scanlan. Plaintiff's husband had then left for home. No conveyance was available, and they proceeded on their way, walking toward their home at Edmondson. They were caught in a rainstorm and were thoroughly drenched. They stopped for shelter at a house two or three miles from Edmondson, and there found plaintiff's husband. After the storm had subsided, and plaintiff had changed her clothing, they walked the remaining distance. Plaintiff caught a severe cold, and was sick when she reached home. Her condition became worse, and three days later she suffered a miscarriage. She was ill in bed for about three weeks, and claimed that she was still sick and suffering at the time of the trial, and that her health was permanently impaired.

The trial judge instructed the jury in substance that the officers of the boat were justified in not stopping at Scanlan if it was dangerous so to do, but that it was their duty to notify plaintiff that the boat would not stop, and to permit her to remain upon the boat or to land at such other place as she might desire, and that, if they failed so to do, plaintiff was entitled to recover for any injury which she had suffered as the direct and proximate result of such neglect of duty. Plaintiff had a verdict for $2,000. Subsequently a motion for a new trial was denied. Defendant brings the case to this court on writ of error.

[1] The instruction to the jury that defendant could not be held liable for its failure to land the plaintiff at Scanlan, if because of stress of weather it was dangerous so to do, was correct. But it is not open to serious controversy that defendant owed a duty to plaintiff to inform her that the boat would not stop at Scanlan, and not to deceive her as to the place where the boat actually landed, and thus to induce her to land at a place other than the destination named in her ticket, and that the defendant must respond in damages for any injuries which plaintiff has suffered, and which are directly and proximately attributable to its breach of duty in that regard.

[2] Hence the important question is whether the injuries for which plaintiff claims damages can fairly and rightfully be imputed and charged to defendant's wrongful acts. This question, and also the related one of plaintiff's contributory negligence, were properly left to the decision of the jury. Upon this record, it cannot be said, as matter of law, either that plaintiff was guilty of negligence which contributed to her injuries, or that her exposure, illness, and miscarriage were not brought about by the acts of defendant's servants in putting her off the boat at the wrong place, and in not only failing to inform her, but deceiving her, as to the true situation. Assuming plaintiff's story to be true, as we must, she was deceived into landing at Womack, believing it to be Scanlan, and suddenly found herself in a strange and lonely place, some distance from where her husband was

to meet her. There was no one at the landing from whom she could make inquiry. The nearest house was at the levee, about one-half mile distant. No conveyance could be obtained. Under such conditions, the natural thing for her and the children to do was to walk to Scanlan. This they did. Upon reaching Scanlan, and not finding her husband, it was not unnatural for them to continue their journey toward home on foot. Plaintiff had always been strong and healthy, and able to do outdoor work. Hence it cannot be said that she could reasonably have anticipated the ill consequences which followed. She could not prevent the rainstorm, and whether she could have avoided the consequent wetting and exposure was a question of fact. When she finally found shelter, she took the precaution to put on dry clothing. Having traversed more than two-thirds of the distance to her home, and her husband then being with her to assist in carrying the luggage, she was not necessarily at fault in walking the remaining two or three miles. It can scarcely be doubted that her subsequent illness was due largely to the fatigue and exposure of her trip from Womack to Edmondson. And it is fairly inferable that her anxiety of mind, caused by finding herself in a strange place, together with her lack of information as to her whereabouts and the direction to be taken and the road to be followed, and the consequent loss of way and increased distance traveled, all contributed materially to her injuries.

[3] A few cases, such as Pullman Palace Car Co. v. Barker, 4 Colo. 344, 34 Am. Rep. 89, and Hobbs v. Railway Co., 10 Law Rep. (Q. B.) 111, support the contention of defendant that, in an action growing out of the failure of a common carrier to carry its passenger to the right destination, what are termed consequential damages cannot be recovered. These decisions have been much criticized and have not been generally followed. The great weight of authority is to the effect that, in cases where it does not appear that an adequate and independent cause has intervened to produce the injury complained of, and where, as here, the evidence warrants the finding of a causal connection between the wrongful act of defendant and such injury, plaintiff's right of recovery and the reasonable amount of damages, if any, to be awarded, are questions of fact to be determined by the jury. Among the many cases so holding are the following: Brown v. Railway Co., 54 Wis. 342, 11 N. W. 356, 911, 41 Am. Rep. 41; Sloane v. Southern Cal. Ry. Co., 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; Malone v. Railroad, 152 Pa. 390, 25 Atl. 638; Terre Haute & Indianapolis R. R. Co. v. Buck, 96 Ind. 346, 49 Am. Rep. 168; Yazoo & M. V. R. Co. v. Hardie, 106 Miss. 436, 64 South. 1; L. & A. Ry. Co. v. Rider, 103 Ark. 558, 146 S. W. 849; Moss v. D. & M. Ry. Co. (Mich.) 154 N. W. 140; Moss v. D. & M. Ry. Co., 182 Mich. 40, 148 N. W. 204; Duffiny v. D. & M. Ry. Co., 186 Mich. 40, 152 N. W. 1029.

The judgment of the lower court is affirmed.