MORGAN MEYERS, Appellee, v. KEOKUK ELECTRIC COMPANY, Appellant.

CARRIERS: Carrier of Passengers—Wrongful Expulsion. Evidence
1 held to justify a jury finding that plaintiff was clothed with the rights of a passenger, and that his expulsion from the train was wrongful.

CARRIERS: Carrier of Passengers—Wrongful Expulsion Matures Sub-
2 stantial Damages. The wrongful expulsion of a passenger from a train, in and of itself justifies a substantial recovery of damages.

CARRIERS: Carrier of Passengers—Damages Consequent on Wrong-
3 ful Expulsion. A passenger who, after being wrongfully expelled from a train late at night, in bitterly cold weather and in a friendless place, attempts, in good faith and in the exercise of reasonable prudence, to reach his home afoot, and is severely frozen in the attempt, may recover of the carrier the resulting damages.

*Appeal from Lee District Court.*—HENRY BANK, Judge.

JANUARY 11, 1921.

ACTION at law to recover damages for personal injury. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals. The material facts are stated in the opinion.—*Affirmed.*

*O'Harras, Wood & Walker,* for appellant.

*F. M. Ballinger* and *W. G. Blood,* for appellee.

WEAVER, J.—The defendant owns and operates an interurban electric railway from the city of Keokuk, Iowa, to the cities of Hamilton and Warsaw in the state of Illinois, and is a common carrier of passengers between the places named. The plaintiff is a colored man, living at Keokuk. On January 16, 1916, plaintiff was in Warsaw, desiring and intending to return to his home on one of defendant's cars, leaving that city about midnight. The weather was very cold, the mercury registering from 10 to 12 degrees below zero, with a strong northwest wind blowing. When the car was opened up for receipt of passengers, plaintiff entered, and took a seat. He had been seated for a time, when the conductor came to the door and called him out and told him he must leave the car. What was said between them is the subject of dispute, but it is conceded that the conductor peremptorily ordered him to quit the car. Plaintiff swears that he remonstrated, and asked the reason for his expulsion, but received no answer except a threat to "throw him out." He further says he informed the conductor of his necessity to be in Keokuk in the morning, and of his inability to find entertainment in Warsaw, and called attention to the exceedingly inclement state of the weather, but without avail. The conductor denies much of the alleged conversation, and says that plaintiff, while complaining at his expulsion and asking the reason therefor, left the car without offering any physical resistance. It is admitted that, when ordered out, he was sitting quietly in his seat, and had created

*1. CARRIERS: carrier of passengers: wrongful expulsion.*

no disturbance. After plaintiff had been expelled and the car started, plaintiff climbed on the bumper, and, clinging there, rode the five miles to Hamilton, where he got off, and walked the rest of the distance to his home, crossing the river on the bridge.

At the end of the trip, his hands, feet, ears, and nose were frozen, the hands especially being in very bad condition. A physician was called to attend him, early in the morning. He testifies:

"I found his hands very badly swollen, blisters on his hands, probably half an inch high, hands very much swollen and painful; the ears were frosted; feet frosted; but hands in worse condition. I treated him about six weeks."

Plaintiff testifies to having suffered great pain from the injuries so received, to being rendered sleepless for a period of 28 hours, and being unable to return to work for four months, and that he still suffers a resulting numbness in his hands, and from an increased susceptibility to cold in the parts which were frozen.

He charges that his expulsion from the car was wrongful, and that, by reason thereof and without fault on his part, he was made to sustain the injuries described; and he demands a recovery of damages therefor.

By way of answer, the defendant admits the expulsion of plaintiff from the car, but justifies the act by the statement that plaintiff was intoxicated to such an extent as to render him an unsafe person to be accepted as a passenger on the car, and that he was in such condition that his presence in the car would have been obnoxious to passengers. It is further alleged that, after his ejectment from the car, plaintiff wrongfully climbed upon the bumper of the car and rode thereon from Warsaw to Hamilton; and that, while thus trespassing and exposing himself to the severe cold, he suffered the alleged injuries, without fault on part of defendant. The issues were tried to a jury, and verdict returned for plaintiff for $1,000. From that judgment, defendant appeals.

I. The assignments of error are entirely too numerous and indulge in too much repetition to permit us to follow them in detail, but we shall try, under a few general heads, to discuss and

pass upon the controlling propositions in the case. We first inquire concerning the sufficiency of the evidence to sustain the verdict. From the testimony the jury could properly find that plaintiff entered defendant's car at Warsaw, to be carried to Keokuk; that he was ready, able, and willing to pay his fare; that he had taken his seat quietly, and was conducting himself with proper decorum, when, just as the car was starting, the conductor called him to the door, and told him that he would not be permitted to ride, and must get out; and that, although plaintiff civilly requested to know why he was being ejected, no explanation was given and the demand upon him to go out was repeated; that he yielded to the demand peaceably; that the hour was about midnight, an hour when business places are ordinarily closed, and that the weather was bitterly cold; that the car was the last one going in that direction before morning; and that the defendant's waiting room was locked as the car departed. The evidence would also support a finding that plaintiff was not intoxicated and not disorderly and not guilty of any offensive conduct justifying the conductor in expelling him from the car. Assuming the existence of these facts to have been found by the jury, plaintiff, having entered the car for the legitimate purpose of being transported to his home, and being ready and willing to pay his fare, became clothed with the rights and privileges of a passenger in the vehicle of the common carrier, and could not be lawfully ejected or cast out at the whim or caprice of the conductor or other servant of the company, without good cause.

In support of the defense, the conductor testifies that, on his arrival at Warsaw on the evening in question, he went into the waiting room in the station to register, and while there, he saw plaintiff in the room, and noticed him taking a drink from a bottle; or, to use the witness's own phrase, "When I went in, he had the bottle up to his mouth, and took a good healthy swallow." The time between this incident and the occurrence in the car does not appear. The plaintiff denies having drunk anything while in Warsaw except a glass of beer, and a person who says he accompanied plaintiff during his stay in Warsaw and was with him in the waiting room corroborates the plaintiff's story.

Other witnesses for the defendant say they smelled whisky on plaintiff's breath, and one or two of them say he staggered, in walking down the aisle of the car. The conductor's testimony on this point is not of very positive character. Being asked to state whether, in his opinion, plaintiff was intoxicated, his reply was:

"I should say he was under the influence of liquor. When he passed by me within four or five inches, I could smell his breath."

He admits that plaintiff was peaceable and orderly; does not pretend that he then accused plaintiff of intoxication or of any other offense or fault, but admits that he simply ordered him out of the car, and told him he could not ride. The car was not crowded or filled, having only about a half dozen passengers. Plaintiff admits that he brought home with him a bottle of whisky, but denies that he sampled its contents, and produces a witness who corroborates him in saying that the bottle was delivered in Keokuk with its contents and cork still inviolate.

The jury evidently found for the plaintiff that he was wrongfully expelled from the car, and such finding is abundantly sustained by the testimony. Such violation of the plaintiff's rights as a passenger was an actionable wrong, and the trial court did not err in so holding.

II. It being sufficiently established that plaintiff's expulsion from the car was wrongful, we have next to consider the measure and extent of defendant's liability therefor. It is sug-

2. CARRIERS: carrier of passengers: wrongful expulsion matures substantial damages.

gested by counsel for appellant that, in any event, the recoverable damages sustained by plaintiff are, at most, merely nominal. The argument proceeds on the theory that, as a matter of law, the defendant cannot be assessed with damages for the physical injuries sustained by plaintiff; it being insisted by the defense that the freezing of which plaintiff complains is not the proximate result of defendant's wrong in ejecting him from the car, but of plaintiff's own recklessness or negligence in exposing himself to the inclemency of midwinter weather. Even if this last-mentioned theory of the plaintiff's own responsibility for his injury by freezing were to be conceded, it by no means follows that the court may say, as a matter of law, that he should

be allowed to recover merely nominal damages for his expulsion from the car. A passenger wrongfully ejected from a car suffers something more than a merely technical invasion of his right, and this is especially true when the wrong is committed under circumstances savoring of personal indignity and unnecessary humiliation. For such a wrong the jury is authorized, within reasonable limits, to assess substantial damages.

III. If we understand the position of counsel, it is their contention that, because plaintiff testified that he did not begin to freeze until he reached Hamilton and undertook the walk across the bridge, such injury cannot be charged to the wrong of the defendant. Just why this should be so, counsel do not explain. Of course, if the injuries plaintiff sustained by freezing are not proximately due to the wrongful act of the defendant in ejecting him, no damages can be assessed on that account, whether the freezing took place on the bridge or elsewhere. The material question at this point is whether there was causal connection between the alleged wrong and the injury. Cases of this nature are by no means unknown to the courts. The subject has been considered from various angles in the following authorities: 2 Hutchinson on Carriers (3d Ed.), Section 1082; 6 Cyc. 563; *Tilburg v. Northern C. R. Co.*, 217 Pa. 618 (66 Atl. 846); *Malone v. Pittsburgh & L. E. R. Co.*, 152 Pa. 390 (25 Atl. 638); *Brown v. Chicago, M. & St. P. R. Co.*, 54 Wis. 342 (11 N. W. 356); *Patry v. Chicago, St. P., M. & O. R. Co.*, 82 Wis. 408 (52 N. W. 312); *Chicago & E. I. R. Co. v. Mitchell*, 56 Ind. App. 354 (105 N. E. 396); *Kentucky Cent. R. Co. v. Biddle*, (Ky.) 34 S. W. 904; *Cincinnati, H. & I. R. Co. v. Eaton*, 94 Ind. 474; *Lake Erie & W. R. Co. v. Close*, 5 Ind. App. 444 (32 N. E. 588); *Louisiana & A. R. Co. v. Rider*, 103 Ark. 558 (146 S. W. 849); *Schroeder v. Detroit, G. H. & M. R. Co.*, 174 Mich. 684 (140 N. W. 968); *Adams v. Chicago, G. W. R. Co.*, 156 Iowa 31; *Delmonte v. Southern Pac. Co.*, 2 Cal. App. 211 (83 Pac. 269); *Gulf, C. & S. F. R. Co. v. Bunn*, 41 Tex. Civ. App. 503 (95 S. W. 640).

There are numerous other cases of the same general import, which we will not stop to cite. In the *Adams* case, supra, we held that action would lie for damages in favor of a passenger

3. CARRIERS: carrier of passengers: damages consequent on wrongful expulsion.

rightfully ejected for drunkenness, where the defendant's agent turned him adrift at night, in cold winter weather, under circumstances making it reasonably certain that he would suffer serious injury. It is, of course, true that a passenger wrongfully ejected from a car or train cannot recklessly or foolishly aggravate the inconvenience or suffering or injury so resulting to him, and thereby enhance or enlarge the damages recoverable from the carrier; but, on the other hand, he is not bound at his peril to use the highest possible degree of care in the choice of expedients by which to extricate himself from his unpleasant, if not dangerous, predicament. It is his duty to exercise reasonable care to protect himself, but what is reasonable care is ordinarily to be found by the jury, in view of all the accompanying circumstances. If a man be thus cast adrift at midnight, in a strange place, with little or no money, in extremely inclement weather, with no available shelter, no friend or acquaintance in reach of his cry for aid, and it be possible for him, by exerting all his powers, to reach the shelter of his home, we think no court will hold him negligent or unreasonable, as a matter of law, if he make the attempt.

As was said by the Pennsylvania court, of the conduct of a person placed in such position by wrongful expulsion from a car:

"She was in no fault herself, and, being put in a position of embarrassment and difficulty, she was not bound to use the best judgment, but only good faith and reasonable prudence." *Malone v. Pittsburgh & L. E. R. Co.*, 152 Pa. 390 (25 Atl. 638).

The conductor who expelled the plaintiff in this case himself says that the night was "bitterly cold." He left the waiting room locked against the plaintiff's return to its shelter. It was an hour of the night when business places and homes were closed, and when plaintiff's application for admittance at the door of a stranger might be answered with a loaded gun. That the man thus abandoned to his fate might perish, or undergo intense pain and suffering, was more than a merely possible result. It was such a likely result that the jury could well find that it should have been anticipated by the conductor.

If the ejection of the plaintiff from the car was wrongful (and such appears to have been the finding of the jury), the fact that plaintiff attached himself to the bumper and rode back

to Hamilton is in no sense of the word a defense for the wrong committed upon him. Whether, if the freezing which he suffered took place in the course of his ride to Hamilton, he could recover any damages therefor, we need not consider or decide. Plaintiff himself says that the freezing occurred after he entered on the bridge, and not before; and there is no evidence to the contrary.

IV. Much criticism is directed against the charge to the jury, and error is assigned upon refusals to charge as requested. In so far as these requests state correct rules of law, they are fairly covered or included in the paragraphs given by the court on its own motion. The charge as a whole is quite favorable to the defendant.

The jury was clearly informed that the conductor had the right to eject the plaintiff if the latter was intoxicated, and that plaintiff could not recover damages for any injury suffered by him if he himself in any way contributed thereto. A further instruction informed the jury that plaintiff's act in attaching himself to the bumper was a trespass, and that if, in so doing, he in any degree contributed to the physical injuries of which he complains, then for such injuries so contributed to by himself he could recover nothing.

The burden of proof was properly placed upon the plaintiff, and the rights of the defendant carefully guarded. Other propositions advanced by counsel for a reversal of the judgment appear to be without merit. The legal principles involved are too well settled to call for extended debate. The fact issues have had fair consideration at the hands of the trial court and jury; the damages assessed are by no means extravagant; and there appears no good or sufficient reason for ordering a new trial. The judgment appealed from is, therefore,—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.